## Case No. 8,206.

### LEEDS et al. v. CAMERON.

[3 Sumn. 488.][1]

Circuit Court, D. New Hampshire. May Term, 1839.

MORTGAGES — FUTURE ADVANCES — AT COMMON LAW—IN NEW HAMPSHIRE—COSTS IN JUDGMENT OF LESS THAN FIVE HUNDRED DOLLARS.

1. At the common law, a mortgage, bonâ fide made. may be for future advances and liabilities for the mortgagor by the mortgagee, as well as for present debts and liabilities.

[Cited in Lawrence v. Tucker, 23 How. (64 U. S.) 27.]

[Cited in Ackerman v. Hunsicker, 85 N. Y. 47; Alexandria Sav. Inst. v. Thomas, 29 Grat. 488; McCarty v. Chalfant, 14 W. Va. 547; Louisville Banking Co. v. Leonard, 90 Ky. 111, 13 S. W. 522.]

2. Under the statute of mortgages of New Hampshire, of the 3d July, 1829 [Laws 1829, p. 486]. a mortgage is void pro tanto, so far as it is intended to secure the payment of any moneys, or other things, which were not contracted for. or the liability for which did not attach, at the time of the execution of the mortgage; still it is valid for what is actually owing at the time the mortgage is executed.

[Cited in Stearns v. Bennett, 48 N. H. 401.]

---

[1] [Reprinted from 1 N. B. R. 521 (Quarto, 138) by permission.]

[1] [Reported by Charles Sumner, Esq.]

3. In the circuit court of the United States, if the sum for which judgment is to be entered is less than five hundred dollars, the plaintiff is not entitled to costs.

[Cited in Hamilton v. Baldwin, 41 Fed. 430.]

This was a plea of land, wherein the plaintiffs demanded against the tenant, James Cameron, seizin and possession of certain tracts of land therein described, and alleged that they were lawfully seized of the premises within twenty years last past; and that the said Cameron hath since entered into the premises, and thereof unjustly disseised them, and still unlawfully held the premises from them. Plea, the general issue.

To maintain the issue on their part, the plaintiffs introduced a deed of mortgage to themselves from the said Cameron, dated October 25, 1834, and acknowledged on the 29th of the same October, conveying to them the demanded premises in fee and in mortgage, the condition of which was as follows: "Provided, nevertheless, that if the said Dorcas and James, or either of them, their, or either of their heirs, executors, or administrators, shall pay unto the said James Leeds, Jr., and Timothy C. Leeds, their executors, administrators, or assigns, the sum of five hundred dollars in six months, the sum of one thousand dollars in one year, and the sum of three thousand dollars in two years from the date hereof, respectively, and also shall well and truly pay all sums of money, which now are, or may be, owing to the said James and Timothy C., from the said James Cameron, on account or otherwise, with interest on said sums, at the rate of six dollars per hundred upon every dollar for every year during said term, payable (semiannually), and shall keep the buildings, now standing, or which may be erected on the granted premises, insured in the full sum of thirty-five hundred dollars, until said sum and interest shall be fully paid, at some one or more incorporated insurance companies, by policies payable to the said James Leeds and Timothy C. Leeds, or assigns, in case of loss, or shall pay to the said James and Timothy C. Leeds, or assigns on demand, such sum or sums of money as they may expend as, or for, premiums for such insurances; then this deed, as also three certain promissory notes, signed by the said James Cameron, whereby he promised to pay to the said James Leeds, Jr., and Timothy C. Leeds, or order, the said sum and interest, at the times aforesaid, shall be absolutely void to all intents and purposes." The deed was executed and delivered on the day of its acknowledgment.

At the October term of this court, 1837, an auditor was appointed to audit the accounts between the parties in the above-entitled action, and to report the balance, if any, due on the said mortgage. At the May term, 1838, the auditor reported as follows:

"It was admitted, by the parties, that all the promissory notes described in the mortgage deed, referred to in the said commission, are fully paid and discharged; and that, if any thing remains due, it arises from an account and a due-bill, the originals of which are filed, with other testimony, in the case, and are produced to me, annexed to the original mortgage deed, and of which the following are true copies, namely:

**James Cameron to James and Timothy C. Leeds, Dr.**

| 1834. BOSTON. | | |
|---|---|---|
| Oct. 29. To hhd. St. Croix rum 113-4-109 galls. @ 95 cts. | | $103 55 |
| To 1 pipe Holland gin, 126-2-124 @ 110 cts. | | 136 40 |
| To 1 qr. cask Sicily Madeira wine 83 @ 85 cts. | | 28 05 |
| To 1 bbl. old Columbia whisky 39¼ @ 80 cts. | | 31 60 |
| To barrel for whisky | | 1 00 |
| Oct. 31. To cash paid Lowell Insurance Co.'s policy on building | | 1 00 |
| 1835. | | |
| Jan. 5. To 2 baskets Champagne wine, @ $12 | | 24 00 |
| Feb. 7. To 1 bbl. Cognac brandy, 38½ galls. @ 135 cts. | | 51 97 |
| To barrel for brandy | | 1 00 |
| | | $378 57 |
| Interest on bill to Dec. 15, 1836, is | | 47 23 |
| | | $425 80 |

NASHUA, Oct. 29, 1834.—Due to James Leeds, Jr. & Co., forty-one dollars, for balance due on mortgage. $41.

JAMES CAMERON.

Indorsed: BOSTON, March 6, 1835.—Received twenty-one dollars and fifteen cents, for taxes paid by Cameron. $21.15.

"It is satisfactorily proved to me that the whole of the said account is justly due from James Cameron to the plaintiffs, amounting, in the whole, with interest to December 15, 1836, to ........................ $425 8)

"And that there remains due from the said Cameron to the said plaintiffs, on the said due-bill, including interest to Dec. 15, 1836, the sum of .. 22 25

$448 05

"The additional interest on the same, from Dec. 15, 1836, to April 20, 1838, the date of this Report, is ..... 36 21

$484 26

"I, therefore, report, that the balance, if any, due on the mortgage set forth in the plaintiff's declaration, was, on the fifteenth day of December, eighteen hundred and thirty-six, four hundred and forty-eight dollars and five cents; and that the additional interest thereon up to the day of this report, is thirty-six dollars, and twenty-one cents,—making, in the whole, the sum of four hundred and eighty-four dollars and twenty-six cents."

It was in evidence, that the first four articles in the said account were sent to the defendant, by his request, "about October 20, 1834." Five baskets of Champagne wine were sent him in January, 1835, and a barrel of brandy was sent to him in February,

1835. That when the defendant was selecting the said goods, about October 20, 1834, it was said by Mr. Leeds, that these liquors, were to be secured by the mortgage, and Mr. Cameron agreed and assented to it. That when the said mortgage deed was executed, the plaintiffs took from the defendant a due-bill for forty-one dollars, payable to them for the balance of rent due from him to them. It was agreed by the parties, that judgment should be rendered for the plaintiffs or defendant, as the opinion of the court might be, upon the above facts.

Mr. Emery, for plaintiffs.
Mr. Hale, Dist. Atty., for defendant.

Before STORY, Circuit Justice, and HARVEY, District Judge.

STORY, Circuit Justice. This is a suit brought upon a mortgage, and the only question, which arises upon the facts agreed by the parties and the report of the auditor is, for what sum the judgment is to be entered. Nothing can be more clear, both upon principle and authority, than that, at the common law, a mortgage bona fide made, may be for future advances, and liabilities for the mortgagor by the mortgagee, as well as for present debts and liabilities. I need not do more upon such a subject than to refer to the case of U. S. v. Hooe, 3 Cranch [7 U. S.] 73, and Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 448.

The only point requiring consideration is, whether the fourth section of the statute of mortgages of New Hampshire of the 3d of July, 1829 (Laws N. H., Ed. 1830, tit. 105,) has in this respect changed the common law in regard to mortgages of lands in that state. It is argued by the defendant's counsel, that the legislature intended, by the first proviso of the fourth section, to require, not only that the defeasance should be in writing, but that it should contain such certainty as to the money to be secured, or other thing to be done, as would supersede the necessity of any resort to parol evidence to ascertain the extent or amount of the mortgage. It does not appear to me, that this is the true or reasonable exposition of the language. The words of the first proviso are, "That no title or estate in fee simple, &c., of any lands, &c., shall be defeated or encumbered by any agreement whatever, unless such agreement or writing of defeasance shall be inserted in the condition of said conveyance, and become part thereof, stating the sum or sums of money to be secured, or other thing or things to be performed." Now, if we were to give to these words the restricted construction contended for, one effect would be, that the statute would defeat all mortgages, given as indemnity to sureties and others upon bonds and agreements; for it could not appear in certainty upon such mortgages, what loss or injury the surety or other person would sustain, as that must depend upon future contingencies. So, if a father should receive from a son a mortgage to provide suitable maintenance and support for him during his life, the conveyance would, upon this same construction, be void; for it would be utterly impossible, with certainty, to ascertain, what money would from time to time be required for such maintenance and support, or what loss or damage the breach of the condition might occasion. It must depend upon future events. There is a large class of cases, which would be in this very predicament, occurring familiarly in the community. Upon the same ground also, no mortgage would be good, given to secure "all debts due" to the mortgagee, or indeed any debt the amount of which was not specifically ascertained and stated in the condition. It does not appear to me, that the legislature had any such broad prohibition in view. It would impose great inconveniences and embarrassments in the common transactions of life. The whole language of the proviso is perfectly satisfied by considering it to require the nature and extent of the claim, for which the mortgage is given, to be so far set forth, as to leave no doubt as to its identity. In short, that the statute meant to require, that all mortgages should be in writing, and constitute a part of the conveyance, by which the estate was to pass. This was in itself most reasonable; as it would enable creditors in all cases to ascertain, whether an estate granted was absolute or conditional, and would cut off many of the temptations to create secret, undefined trusts, or fraudulent and collusive securities. But when a mortgage is to secure a present debt, or a present liability, its true character is just as well ascertained, as if the specific sum were pointed out. Indeed, if the sum were stated, or the other thing to be performed were set forth, still it would be necessary to ascertain by parol evidence, what portion of the agreement had been performed or money paid since the giving of the mortgage. If a mortgage were to secure the payment of a certain bond or note, contemporaneous with or antecedent to the conveyance, it would still be necessary to resort to parol evidence to ascertain the exact sum due thereon at the time of the mortgage, or afterwards, when it was sought to be enforced. I cannot, therefore, adopt the construction contended for. The present mortgage, in my judgment, falls directly within the first proviso of the fourth section of that act; for the condition of the mortgage does state "the sum or sums of money to be secured, or other thing or things to be performed," in perfect compliance with the requisitions of that proviso.

The second proviso, in the same section, is in substance that "no title or estate, &c., in any lands, &c., which shall hereafter be conveyed in mortgage, as aforesaid, shall be held by the mortgagee for the payment of any sum or sums of money, or the perform-

ance of any other thing, the obligation or liability to the payment or performance of which shall arise, be made, or contracted after the execution or delivery of such mortgage." Now, it seems to me, that the legislature have here expressly intended to cut off all mortgages for the payment or security of any moneys or other things, which were not contracted for, or the liability for which did not attach at the time of the execution of the mortgage. It seems to me, therefore, very clear, upon the words and intent of the act, that no mortgage can be valid for any future advances or accounts between the parties, which were not a matter of right and positive obligation between them at the time of the mortgage. A mere provision for prospective advances or accounts, resting in the discretion of the parties or either of them, would seem to be the very mischief against which the second provision is aimed. Whether the enactment be founded in a wise public policy, or not, is a question with which this court has nothing to do. The judgment must, therefore, be restricted to the items of the account which were contracted for and delivered before the date of the mortgage. The two items of account, reported by the auditor, under the dates of the 7th February and the 5th of May, 1835, and also the due-bill of the 29th of October, 1834, must be rejected. Judgment ought to be given for the other items and interest. The district judge concurs in this opinion; and, therefore, let the conditional judgment be entered accordingly. If the sum, for which the judgment is to be entered, is less than five hundred dollars, the plaintiffs are not entitled to costs. The defendant is not entitled to costs in a case of this sort; for the defence is grossly inequitable, and contrary to the positive agreement of the defendant.