### Rockwell & Hobby, Executors, &c. v. Hobby.

E. advanced money to one who held a bond and mortgage against his mother, H., paying its full amount. There was no assignment executed, the securities were lost, and it did not appear that they ever left the possession of their mutual attor-ney; but E. had the possession of H.'s deed for the premises mortgaged, and retained it till his death. It did not appear how he came by the deed.

*Held*, that the son had an equitable lien on the premises for the amount of his advance with interest.

If there had been no deposit of the deed, but he advanced the money on an agree-ment to have the mortgage assigned, equity would substitute him in the place of the mortgagee.

In the absence of other proof, evidence of an advance of money, and the finding of title deeds of the borrower in the possession of the lender, establishes an equitable mortgage.

February 9, 1844.

The bill was filed by the executor and executrix of Ebene-zer A. Hobby. It set forth that Harriet Hobby, the mother of

Ebenezer, in 1822 bought a piece of land of one Hubbard, and a few days after, mortgaged the same to S. C. Barker. In 1827, she was sued on the bond, and her son, at her request, advanced the amount of the bond and mortgage. He did not take an assignment, but in order to secure him, she deposited with him Hubbard's deed of the land, (which was not recorded,) and he retained the deed until his death. The bond and mortgage cannot be found, and are lost. The bill prayed for a substitution in the place of the mortgage, also to have the benefit of the deposit of the deed as security, and for a sale of the lands to pay the advance made by E. A. Hobby.

The answer, without oath, insisted that the money paid by E. A. Hobby was the defendant's, and that the mortgage was paid off and destroyed. It denied that she deposited Hubbard's deed to secure E. A. H., for any money, and averred that he never had it in his possession to her knowledge.

The testimony established that E. A. Hobby paid the amount of the bond and mortgage, and the deed was in the possession of the complainants. Other facts will be found stated in the opinion of the court.

*George Case*, for the complainants.

*J. Warren Tompkins*, for Mrs. Hobby.

The Assistant Vice-Chancellor.—There is no question but that the testator paid all the money with which Mrs. Hobby's bond and mortgage were satisfied to Barker or obtained from him. Mrs. H. alleges that they were paid with her own funds. Of this there is no proof, and the testimony corroborates the inference arising from its coming out of the testator's hands, that it was his money. Barker says that before suing the bond he applied to her for payment, and she answered that she had not the money. He told her he wanted her to procure it of some neighbor, and she said she would look it up. This shows not only that she had not the money, but that she expected to borrow it. We next find her son, after she has been sued, coming forward and paying it, and taking receipts which express that he

made the payments. I am satisfied from the evidence, that the money paid was his own.

The next question arises upon the possession of the bond and mortgage, and what became of them. That they are either lost or destroyed, we may assume from the statement in the answer. They doubtless passed from the possession of Barker's attorney, to that of Mr. Mead the attorney who appeared for Mrs. H. in the suit on the bond, and who made the payments to the attorney of Barker. Mr. Mead was probably the attorney in some measure, of the testator as well as of Mrs. Hobby. It appears he sent to the testator's counsel Mr. Grim, his bill of costs for the defence put in to the suit on the bond, to which is appended a charge for conveyancing done for the testator, and endorsed on the bill is a note to Mr. Grim, saying that he thinks the within bill should be paid before the assignment of the mortgage, &c., are given to Mrs. Hobby. This shows him acting for both.

At all events, we trace the possession of the bond and mortgage no further. Mr. Mead perhaps retained them for the payment of his bill, and the most probable conclusion as to their fate is, that they were burnt with his law papers many years ago.

The expression in his note in reference to the assignment of the mortgage, is a part of the *res gestœ*, and doubtless related to this transaction. And had the name been *Mr.* instead of *Mrs.* Hobby, or if it were after the death of the testator, I should have felt no difficulty in holding that there was to have been a transfer of the mortgage to the testator. As it is, the matter is involved in much obscurity. This testator may, for his mother, have done what is not usual, viz. advanced his money to take up a mortgage, without intending to keep it on foot as a security. His retaining the receipts is consistent with either supposition. If the case rested here, it would preponderate strongly in favor of his having in view an assignment, or at least retaining the security.

There is another transaction which may aid in solving the difficulty. The bill claims that on her son's making these advances, Mrs. H. deposited with him her deed of the mortgaged

premises, then unrecorded, as security for such advances, and that it remained with him till his death, and the complainants have had it ever since. The answer denies the deposit, and says that Mrs. H. supposed that the deed was recorded, and that she had it in her own possession. The deed is produced by the complainants, and it has not been recorded. It does not appear when or how it came to the possession of the testator or of his representatives. Coming from the latter, we are to take it in the absence of explanation, that it was among the papers of the testator.

And in the absence of all other proof, the evidence of an advance of money and the finding of title deeds of the borrower in the possession of the lender, is held to establish an equitable mortgage. In *Ex parte Corning*, 9 Ves. 115, Lord Eldon says that the fact of the adverse possession of the deeds in the person claiming the lien and out of the other, was a fact, that entitled the court to give an interest.

In *Ex parte Wetherell*, 12 Ves. 401, the same Chancellor says, "it is very well settled, that if there has been a delivery of deeds, that, in this court, amounts to an equitable mortgage; and the possession of the deeds is, if no other purpose is shown, evidence of an agreement that the estate itself shall be a security."

In *Ex parte Haigh*, 12 id. 403, the evidence was, an application by one very much embarrassed, for assistance by discounting; after which application the lease was delivered. This was held sufficient to establish an equitable mortgage.

In *Ex parte Langton*, 17 Ves. 230, Lord Eldon said, "it has been long settled, that a mere deposit of title deeds upon an advance of money, without a word passing, gives an equitable lien."

Long before this, Lord Thurlow held in *Featherstone v. Fenwick*, 1 Bro. C. C. 279 n., and in *Harford v. Carpenter*, 1 id. 370 n., (see them stated by Lord Eldon in 14 Ves. 606;) that if there were a deposit of a lease, and nothing more passed at the time, that should be intended as a deposit for the sum then due. And see 2 Hovenden's Supplement to Vesey, Junior, 104, the note to *Ex parte Corning*, on the same subject.

Again, in *Kensington, Ex parte*, 2 V. & B. 79, 83, Lord

Rockwell v. Hobby.

Eldon says, "it has been so long settled that a mere deposit of deeds, without a single word passing, operates as an equitable mortgage, that whatever I might have thought originally, I must act upon that as settled law."

In the case before me, the deed went into the possession of the testator for some purpose. None is specifically proved; but there is an advance of money proved, an advance which went to discharge a mortgage given in truth for a part of the purchase money of the land described in that deed. The only inference is, that the deed was deposited as security for the advance.

In connection with the expression before adverted to, in Mr. Mead's note to Mr. Grim, it may be that the deed was left as security, while the advances were making from time to time, and with the expectation that when they were completed, and Barker paid off, the mortgage would be assigned. In this view the lien would be equally operative. The cases of *Wright, Ex parte*, 19 Ves. 258, per Lord Eldon, and *Hockley* v. *Bantock*, 1 Russell, 141, 145, show that an agreement to give a mortgage and delivery of the title deeds for the purpose of carrying it into effect, constitute a mortgage in equity, as against the person making the agreement.

The testimony of Dusenbury confirms the supposition that there was either an agreement that the mortgage should be assigned, which Mrs. Hobby supposed had been carried into effect, or an agreement that the deed should remain in the testator's hands as security. He testifies that she said she was willing the executrix should have the land, but she would rather the sale of it would be postponed until her youngest child became of age, and then the whole property could be sold to better advantage by being sold together. The evidence is that the land in question was bought by her to add to land which she previously owned. The conversation could not have referred to the testator's interest or that of his family, in the latter property, because it conceded the claim of the executrix to have the whole of the land spoken of. And as there is no other right or claim discoverable from the evidence, except that arising from the testator's advances to pay off the mortgage, the conversation must have referred to that subject. Upon the whole, my conclusion is that

the advances were made upon the security of the property, and that the testator had an equitable lien for the amount. If the deed were deposited as security the lien is direct; and if there were an agreement to have the mortgage assigned, equity will treat it as having been done, in order to give it effect.

In either view, the statute of limitations is not applicable, and I need not examine whether the Revised Statutes apply to equitable demands existing when they went into operation.

There must be a decree for a sale of the premises, for the payment of the testator's advances with interest, and the complainants' costs.