ROBINSON, Receiver, &c., *v.* WILLIAMS, Receiver, &c.

A mortgage of land to secure future advances, the limit of which is not defined, is good for the amount of the advances thus made as against a creditor by judgment recovered before such advances become due.

*So held,* where the subsequent judgment was for a precedent debt; and, it seems, the record of the mortgage is notice to a subsequent purchaser or an incumbrancer for value, so as to postpone the latter to the lien for advances made before notice from the subsequent incumbrancer.

APPEAL from the Superior Court of the city of Buffalo. Action by the receiver of the Hollister Bank, against Williams the receiver of the Reciprocity Bank, and other defendants, for the foreclosure of a mortgage. Prior to September, 1857, both banks were doing business in the city of Buffalo.

Upon the trial these facts were proved: On the 24th of October, 1854, the defendants Gibson and wife executed and delivered a mortgage to the Hollister Bank, which recited that in consideration of the sum of $1 to them in hand paid, and for the purposes thereinafter declared and stated, they granted and conveyed to said bank certain premises therein particularly described. The mortgage contained a further recital as follows: "Whereas, it is contemplated that the said party of the second part will hereafter from time to time make loans or advances, by way of discount or otherwise, to the said Charles D. Gibson, upon drafts, bills of exchange, promissory notes and commercial paper, either made and drawn, or accepted or indorsed by said Gibson, and it has been agreed that these presents shall be executed to indemnify and secure

the said party of the second part on account of any such loans, advances or discounts. Now therefore the condition of these presents is expressly this: that if the said Charles D. Gibson, his heirs, &c., shall and do well and truly pay, retire and take up at maturity any and all such drafts, bills of exchange, promissory notes or commercial paper, as *may be discounted or advanced upon* by the said party of the second part, *for or to the said Gibson,* and shall well and truly pay at maturity all *and every such loans, discounts or advances,* as above recited, and shall well and truly indemnify pay and save harmless the said party of the second part from and against all loss, costs, damages, expenses and interests by reason thereof, then these presents shall cease and be null and void." But in case of the non-fulfillment of the above conditions, then the party of the second part was authorized to sell the mortgaged premises and to make and execute to the purchaser a deed therefor.

The mortgage was duly acknowledged on the 25th of October, 1854, and recorded on that day in the clerk's office of Erie county. On the 1st of December, 1855, the defendant Gibson drew his bill of exchange on one Greenleaf, at Boston, whereby he requested said Greenleaf to pay to his own order the sum of $2,500, sixty days from the date thereof; and before said bill become due and payable Gibson indorsed the same to the Hollister Bank, which, on the faith and security of said bill and said mortgage, discounted the same and advanced to said Gibson the amount thereof. This bill was protested at maturity, and no part thereof has ever been paid. On the 29th of December, 1855, Gibson drew another bill of exchange on Greenleaf at sixty days from date, whereby he requested him to pay to his (Gibson's) order, the sum of $1,800.

Before this bill became due, Gibson indorsed it to the Hollister Bank, which discounted it and advanced to him the amount thereof, on the faith of said bill and the mortgage. This bill was also protested at maturity, and no part thereof has been paid.

The complaint set up that the defendant Williams, among others, claimed some interest in the mortgaged premises, and

prayed the usual judgment of foreclosure and sale, and that said defendant, and all others claiming interests therein subsequent to that of the Hollister Bank, might be barred and foreclosed. The defendant Williams set up and proved that, on the 29th of January, 1856, the Sackett's Harbor Bank (whose name was subsequently changed, by an act of the legislature, to that of the Reciprocity Bank), recovered a judgment against said Gibson to the amount of $2,798.29; that a transcript thereof was duly docketed in the clerk's office of Erie county on that day; that said Gibson was then the owner of said mortgaged premises; and Williams insisted that said judgment was a lien on said premises, and prior to that of the mortgage. Neither of said bills of exchange were due at the date of the recovery of said judgment. The Superior Court of Buffalo, at special term, gave judgment in favor of the plaintiff, and declared said mortgage to be a prior lien to said judgment. On appeal, the same was affirmed at general term, and from that judgment the defendant Williams appealed to this court.

*Henry W. Rogers*, for the appellant.

*Thomas C. Welch*, for the respondent.

DAVIES, J. There can be no doubt that, as between the original parties to this mortgage, the validity of it, as a pledge of the mortgaged premises to secure the amount of these two drafts, could not be questioned. It was clearly the intent of the parties that the lands described should stand as security for all advances and discounts made by the Hollister Bank to Gibson. If, therefore, there were no legal mortgage, there was, undeniably, an equitable one, which a court of equity would enforce against the original parties to it, and all others not in the condition of *bona fide* purchasers or subsequent incumbrancers without notice. The advances made to Gibson were before the recovery of the Reciprocity Bank's judgment. As soon as the advances were made, they were embraced in

and secured by the mortgage. That judgments and mortgages may be taken to secure future advances, though no present indebtedness was subsisting at the time of their execution or rendition, has long been well settled. (*Conrad* v. *The Atlantic Ins. Co.*, 1 Peters, 386; *Leeds* v. *Cameron*, 3 Sumn., 488; *Hubbard* v. *Savage*, 8 Conn., 215; *Walker* v. *Snediker*, 1 Hoff. Ch., 145; *Com. Bank* v. *Cunningham*, 24 Pick., 270; *Monell* v. *Smith & Jenkins*, 5 Cow., 441; *Lyle* v. *Ducomb*, 5 Bin., 585; 4 Kent's Com., 175; *Lansing* v. *Woodworth*, 1 Sand. Ch., 43; *Barry* v. *Merchants' Ex. Co.*, 1 id., 314; *United States* v. *Hooe*, 3 Cranch, 73; *Livingston & Tracy* v. *McInlay*, 16 Johns., 165; *Truscott* v. *King*, 2 Seld., 147.)

In *Conrad* v. *The Atlantic Insurance Company* (*supra*), a mortgage was given to secure a debt upon a *respondentia* bond, and it was said that the debt was of too contingent a nature to uphold a mortgage as collateral security for the payment of it. STORY, J., at page 448, says: "We know of no principle or decision that justifies such a conclusion. Mortgages may as well be given to secure future advances and contingent debts as those which already exist and are certain and due."

The case of *Hooe* v. *United States* (*supra*), is, in some respects, not unlike the present. There, one Fitzgerald conveyed property in trust to W. & J. C. Herbert, to indemnify Hooe for all indorsements or liabilities he might incur on behalf of Fitzgerald; and if Fitzgerald should pay and discharge all such liabilities, the trustees were to reconvey the property to him; but if Hooe should pay any such liabilities on account of Fitzgerald, then, on demand of Hooe, the trustees were to sell the trust property, and pay and satisfy the amount demanded by Hooe. Hooe became liable to pay several notes of Fitzgerald, indorsed by him, and on Fitzgerald's death he was largely in arrear to the United States, and they claimed a preference over all other creditors, under the laws thereof, and that such lien was superior to that created by the trust deed for the benefit of Hooe, and that it was fraudulent as to the United States. It will be observed that, in this case, no sum certain, for which the property was held in trust, was mentioned in the deed.

MARSHALL, Ch. J., in delivering the opinion of the court, says (p. 88): "That the property stood bound for future advances is, in itself, unexceptionable. It may, indeed, be converted to improper purposes, but it is not positively inadmissible. It is frequent for a person who expects to become more considerably indebted to mortgage property to his creditors as a security for debts to be contracted, as well as that which is already due. All the covenants in this deed appear to the court to be fair, legitimate, and consistent with common usage."

It is pressed upon us that this mortgage is invalid, because no sum certain is mentioned therein. There might be some force in the argument if the Reciprocity Bank stood in the position of a subsequent purchaser or incumbrancer in good faith, although it will be attempted to be shown that the mortgage would be good as against the bank, even if such were its position. That question will be considered hereafter. The Supreme Court of this State, in the case of *Monell* v. *Smith* (*supra*), held that a surety, who held a bond and warrant of attorney, conditioned to pay all notes theretofore or thereafter to be indorsed, and to indemnify him against such indorsements, might enter up judgment and issue execution thereon for the sum for which he was actually liable, although the bond was not for a specified sum. That a bond and warrant of attorney might be taken by a surety, to secure him against future liabilities to be incurred by him, the court say, is warranted by the cases cited and considered by the late Chancellor in *Roosevelt* v. *Mack* (6 Johns. Ch., 266, 279–285). The court add, "the only question is, whether the same course may be pursued where the bond relates in general terms to liabilities as surety or indorser, past and prospective, without mentioning a sum certain; and we think it may. It is true, the sum does not appear on the face of the bond; and there is no doubt that, in an action on such bond, breaches must be assigned. It would be the same, however, we think, as to a bond conditioned to pay specified sums to third persons. The certainty is the same in both cases. In both, we may be obliged to look beyond the face of the bond to see what is due. In a techni-

Robinson *v.* Williams.

cal sense, that is certain which may be made certain. We all know the objects of the parties to these instruments. It is, to afford the most prompt indemnity."

In *Shiras* v. *Caig* (7 Cranch, 34), the subject under consideration seems to have elicited a very full examination; and it was there held, that it was not necessary to the validity of a mortgage that it should truly state the debt it is intended to secure, but it shall stand as a security for the real, equitable claims of the mortgagees, whether they existed at the date of the mortgage or arose afterwards upon the faith of the mortgage, before notice of the defendant's equity. Chief Justice MARSHALL, in delivering the opinion of the court, at page 50, says: "It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of £30,000, due to all the mortgagees. It was really intended to secure different sums, due at the time to particular mortgagees, advances afterwards to be made and liabilities to be incurred to an uncertain amount. It is not denied that a deed which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is certainly always advisable fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real, equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation." These principles, and the cases upon which they rest, have lately been emphatically affirmed by the Supreme Court of the United States, in *Lawrence* v. *Tucker* (23 How., 14).

I arrive, therefore, to the conclusion, that this is a valid mortgage as between the parties to it, and that the mortgagee was secured thereby the amount of the advances upon the two drafts mentioned in the complaint, although no sum certain was mentioned on the face of the mortgage. These advances were made prior to the recovery of the judgment of the Reci-

procity Bank, and prior, therefore, to any equities of that bank. It follows, therefore, they were made prior to any notice to the Hollister Bank of any such equities. No notice could be given of that which had not an existence. It is established then, it is submitted, that, at the date of the recovery of the judgment by the Reciprocity Bank against Gibson, the Hollister Bank had a good legal, and certainly equitable, mortgage upon the premises, to secure the amount of the two drafts already referred to. Was that judgment a prior lien to the mortgage? The judgment became a lien, at the time it was docketed, upon the interest of the defendant therein in all lands in the county of Erie. (2 R. S., 359.) In equity, the land was undeniably bound to pay off the amount of these two drafts. The law is well settled, that the equitable mortgagee is entitled to a preference over subsequent judgment creditors. (*Matter of Howe,* 1 Paige, 129, and the cases there cited; Willard's Eq. Jur., 441, 442; *Rockwell* v. *Hobby,* 2 Sand. Ch., 9; Hilliard on Mortg., vol. I, 451.) If this mortgage is to be regarded simply as an equitable mortgage, there can be no question that, in accordance with well-settled rules of law and a uniform current of decision, it is a valid security, and is entitled to priority over the subsequent judgment of the Reciprocity Bank.

But, I think, if that bank had been a purchaser on the day of the recovering of its judgment, or an incumbrancer by way of mortgage for money then advanced, the mortgage of the Hollister Bank would equally have been entitled to priority. The recording of the mortgage was notice that the Hollister Bank had a mortgage on the premises for the purposes therein specified. There was enough to have put a *bona fide* purchaser or incumbrancer upon inquiry; and an application to the Hollister Bank would have disclosed the sum certain for which the security was held. As was said by the Supreme Court in *Merrell* v. *Smith* (*supra*), "we may be obliged to look beyond the face of the bond to see what is due. In a technical sense, that is certain which may be made certain." The precise sum for which the mortgage was held as security might, at any time, readily and with certainty, have been ascertained, and a

*bona fide* purchaser or incumbrancer, with the notice which the record of this mortgage furnished him, if he had omitted to make the inquiry which it indicated, could hardly have claimed to have been a *bona fide* purchaser or incumbrancer. The authorities bearing on this question of notice are fully reviewed in the case of *Williamson* v. *Brown* (15 N. Y., 354), and the result of them stated as follows: "The true doctrine on this subject is, that where a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser." But we are not without direct authority on the point now under consideration. The case of *Kramer* v. *The Trustees, &c., of the Farmers' Bank of Steubenville* (15 Ohio, 253), is of this character. The question there was, originally, whether mortgages given to one Doyle, in May, 1840, were to have priority over those given to one McDowell, which, though dated prior to Doyle's mortgage, were not recorded until 30th September, 1842. The mortgage to Doyle specified no sum in it, but the condition was, "that, whereas the said Alexander Doyle had theretofore indorsed paper of the said Wells, Henry & Co. (the mortgagors), and had also promised to make further indorsements, it was provided that if the said Wells, Henry & Co. should indemnify and save harmless the said Doyle, then the said deed was to be void," &c. Doyle alleged that, relying on this indemnity, he had continued to indorse for the mortgagors, and claimed that his mortgage was a prior lien to that of McDowell and of the judgment creditors. The court sustained Doyle's claim, and directed a sale of the property mortgaged, and that he be paid the amount of his liabilities. Kramer and others, judgment creditors, filed a bill of review, claiming that the court had erred in giving validity and priority to Doyle's mortgage. Among other things, they alleged that Doyle's mortgages were not good and valid as against the complainants, because they

were void for uncertainty, and it could not be ascertained how or when the same became forfeited, or how the same could or would be satisfied. In the opinion, at page 260, the court say, "Doyle had a right to ask indemnity, and the mortgagors had a right to give it. It was done by way of mortgage; and although these mortgages were intended to cover subsequent as well as previous liabilities, they could not, on this account, be objectionable as between the parties. If, during the existence of these mortgages, a third person had recovered a judgment against the mortgagors, the lien of such judgment might, and probably would, have been preferred to the lien of the mortgagees for liabilities subsequently incurred by Doyle. But these complainants are not in that situation. The liabilities of Doyle had been fixed before the rendition of their judgment. It is not perceived that there would be any difficulty in ascertaining when the condition of the deeds was broken and the mortgage forfeited, nor as to the manner in which they could be satisfied. A similar rule may be deduced from the following cases in Connecticut: *Merrills* v. *Swift* (18 Conn., 266); *Lewis* v. *De Forest* (20 id., 442); *Ketchum* v. *Jauncey* (23 id., 127).

In any aspect in which this case may be regarded, we think it free from doubt, and that the judgment appealed from should be affirmed, with costs.

All the judges concurring,

Judgment affirmed.