HAMILTON MURRAY, President of the City Bank, *vs.* FREELAND T. BARNEY, LESTER S. HUBBARD, WILLIAM DURBIN and others, impleaded with Henry Fitzhugh, De Witt C. Littlejohn and others.

## THE SAME *vs.* THE SAME.

Where the terms of an agreement alleged to be usurious are doubtful and depend upon conflicting evidence, the supreme court will not review the general conclusion of the referee in favor of the validity of the loan.

It is the province of the referee to find the facts, so far as they are deemed necessary to enable the court to pass upon the questions which the appellant desires to review on the appeal.

It cannot be assumed, without proof, that a bank makes a profit by selling exchange on New York city at one-half of one per cent. But when it is shown that the sale of exchange is a profitable business, and it is a part of the agreement that the borrower shall buy a bill of exchange, as the condition of the loan, the transaction is usurious.

Otherwise, where there is no valid agreement of the kind; but merely an expectation that the borrower will purchase a bill of exchange with which to pay his note, when it afterwards matures in the city of New York. *Semble.*

The defendants, F. and L., after executing two mortgages to secure the plaintiff's claims, conveyed the mortgaged premises, by deed with covenants of warranty, to H. Fitzhugh, jun., but without consideration. They subsequently took back two mortgages from H. Fitzhugh, jun. to secure the payment of over $30,000; and afterwards, when they failed, executed an assignment of certain property, including their own mortgages to the plaintiff and the two mortgages from H. Fitzhugh, jun., to the defendants, Barney, Hubbard & Durbin; subject to the payment of the plaintiff's demand in this action. In order to carry out and perfect this assignment, H. Fitzhugh, jun. conveyed the mortgaged premises, by quit-claim deed, to B., H. and D.; *Held*, that B., H. and D. could not claim the benefit of the covenants of

Murray *v.* Barney.

warranty in the deed from F. and L. to Henry Fitzhugh, jun., so as to contest the plaintiff's mortgages on the ground of usury; but they must be regarded merely as assignees of F. and L., taking the whole beneficial interest in the premises, subject to the payment of the mortgage debt.

The condition of a mortgage may provide for future advances, and specify a *certain sum* sufficiently large to cover the amount of the floating debt intended to be secured thereby. *It seems*, however, that as against creditors or subsequent purchasers without notice, the condition of a mortgage cannot be extended by a contemporaneous or subsequent parol agreement, so as to embrace a debt not within its very terms.

BOTH of these actions were brought to foreclose a mortgage executed by Fitzhugh and Littlejohn to the City Bank of Oswego, upon different pieces of land, to secure the same demand, and were tried together. The condition was the same in both, and was as follows: "This grant is intended as a security for the payment of the sum of fifty thousand dollars loaned and advanced by the said City Bank to the said Fitzhugh & Littlejohn on notes, drafts and checks, and also for the payment of any money or moneys that may hereafter be loaned or advanced by the said bank to the said Fitzhugh & Littlejohn, on notes, drafts and checks or otherwise, when the same shall become due and payable, (not exceeding the sum of fifty thousand dollars.)"

The defendants Fitzhugh & Littlejohn appeared, and claimed that they had paid the notes and drafts specified in the mortgage. The defendants Barney, Hubbard and Durbin, (the present owners of the mortgaged premises,) appeared and set up the defense of usury. Both causes were referred, together, to Judge MULLIN, who reported in favor of the plaintiff.

In his fourth finding of fact the referee specifies three drafts and one note of Fitzhugh & Littlejohn, which remain unpaid; and *Fifth.* That the aforesaid drafts and notes are held and owned by said City Bank, and have not been paid by said Fitzhugh & Littlejohn, and the balance unpaid thereon is secured and covered by said mortgages. *Sixth.* There has been paid to said bank by said Fitzhugh & Littlejohn,

in reduction of the amount of said securities, including interest, the sum of $5135.24. *Seventh.* That there is due and unpaid on said securities, and to be collected on said mortgages, the sum of $10,888.72, for which the said plaintiff is entitled to judgment, with interest from the 30th day of June, 1859.

And upon the findings of facts the referee found as conclusions of law, *First.* That said mortgages cover the amount due on said drafts and notes, and that the plaintiff is entitled to foreclose said mortgage for such amount. *Second.* That the plaintiff is entitled to judgment of foreclosure, against all of the defendants except Folger, Cobb and Lawrence, for the sum of $10,888.72, with the interest thereon from June 3d, 1859, with costs.

The defendants in this action excepted to the findings of fact, conclusions of law and rulings of the referee, as follows, to wit : " *First exception.* The defendants except for that the said referee has found and reported as matter of fact, that the drafts and notes mentioned and described in his fourth finding of fact aforesaid, were discounted by the City Bank, and the proceeds credited to the firm of Fitzhugh & Littlejohn ; whereas said referee should have reported that the drafts and notes were discounted by the said City Bank, under an usurious agreement and at a usurious rate of interest, and that said bank imposed as a condition to the discounting of the same, that the said Fitzhugh & Littlejohn should, with the avails and proceeds thereof, purchase a draft of the said bank on the city of New York, at the usurious rate of exchange or interest, by reason whereof the said securities became void.

*Second exception.* The said defendants except to the fifth finding of fact of the said referee, wherein he finds that the said drafts and notes held and owned by the said City Bank, and the balance unpaid thereon, is secured and covered by said mortgages ; whereas the referee should have found and reported that the said drafts and notes were usurious and void, and that the said mortgages were also usurious and void.

Murray *v.* Barney.

*Third exception.* The said defendants except to the sixth finding of fact, that there is due and unpaid on said securities, and to be collected on said mortgages, the sum of $10,888.72, for which the said plaintiff is entitled to judgment, with interest from the 3d day of June, 1859; whereas the said referee should have found and decided that there was nothing due, at the time of the commencement of this action, on the said notes and drafts or the said mortgages.

*Fourth exception.* And the said defendants except for that the said referee has not found in his report that there was nothing due to the said plaintiff from the said Fitzhugh & Littlejohn, upon said drafts and notes, or mortgages; and to each and every of the findings of fact of the said referee.

*Fifth exception.* And the said defendants except for that the said referee has found as conclusion of law, that the said mortgages cover the amount due on said drafts and notes, and that the plaintiff is entitled to foreclose said mortgages for such amount; whereas he should have held and decided that said drafts, notes and mortgages were usurious and void.

*Sixth exception.* And the said defendants except for that the said referee has held and decided as a conclusion of law, that the plaintiff is entitled to judgment of foreclosure against the said defendants, for the sum of $10,888.72, with interest from June 3d, 1859; whereas he should have held and decided that the said defendants were entitled to a dismissal of the complaint, with costs.

*Seventh exception.* The defendants except to each and every of the findings of fact and conclusions of law of the said referee."

The facts appearing in the case, except as above, are sufficiently stated in the opinion of the court.

Judgment of foreclosure having been entered upon the report of the referee, the defendants Barney, Hubbard and Durbin appealed to the general term.

*B. D. Noxon*, for the appellants.

*H. A. Foster*, for the respondent.

*By the Court*, MORGAN, J. This is an appeal from a judgment for the foreclosure of two mortgages, entered up on the report of a referee. There were two suits, one to foreclose each mortgage; and as both were given for the same consideration, the pleadings and evidence are the same in both cases. The mortgages were executed by Henry Fitzhugh and De Witt C. Littlejohn and their wives, to the plaintiff; and both were conditioned to pay "the sum of fifty thousand dollars, loaned and advanced by the said City Bank to the said Fitzhugh & Littlejohn, on notes, drafts and checks, and also for the payment of any money or moneys that may hereafter be loaned or advanced by the said bank to the said Fitzhugh & Littlejohn on notes, drafts, checks or otherwise, when the same shall become due and payable, (not exceeding the sum of fifty thousand dollars.)"

They bear date May 5, 1857, and were acknowledged on the 24th day of June, 1857, and recorded the next day in Oswego county, where the mortgaged premises are situated.

The defendants above named state in their answer, that Fitzhugh & Littlejohn, with their wives, on the 19th day of October, 1857, executed and delivered to Henry Fitzhugh, jun. a deed of conveyance of the premises in question, with covenants of warranty against all claims, liens and incumbrances, and for quiet enjoyment; and that on the 24th day of November, 1857, Henry Fitzhugh, jun. sold the same to these defendants, who are in possession. The consideration of the deed from Fitzhugh & Littlejohn to Fitzhugh, jun. is not stated in the case, so far as I have been able to discover. The sale from him to Barney, Hubbard and Durbin, was by quit-claim; and young Fitzhugh states, in his evidence, that he in fact received no consideration from them, and gave no bond on his purchase from Fitzhugh & Littlejohn; but was

Murray *v.* Barney.

to have what the premises brought, over the debt. What particular debt is not stated, although it may be inferred that he was to have what the premises finally sold for, over incumbrances. He further says, that when he took the deed from Fitzhugh & Littlejohn they owed him two or three thousand dollars for services; but it does not appear that this indebtedness was any part of the consideration of the conveyance.

On the 25th day of November, 1857, the next day after the conveyance from Henry Fitzhugh, jun. to these defendants, but on the same day it was acknowledged, Fitzhugh & Littlejohn having become embarrassed and unable to pay their debts, made an assignment to these defendants to secure to them the payment of twenty-five thousand dollars, exclusive of interest, for which they held their drafts. The assignment transfers to them, among other property, *two certain mortgages of Henry Fitzhugh, jun.*, executed to Fitzhugh & Littlejohn, October 14 and 19, 1857, one for the sum of thirty thousand dollars, and the other for the sum of three thousand dollars. These mortgages appear to cover the same premises. They also assign to these same defendants *their own mortgages*, to foreclose which these suits are brought; and conclude with a power of attorney authorizing these defendants to perform all acts necessary to the collection of the mortgages aforesaid.

I think it might be inferred that the deed from Fitzhugh & Littlejohn to Henry Fitzhugh, jun., was voluntary; and that the quit-claim from Henry Fitzhugh, jun. to these defendants, was made to perfect the assignment to them, and at the request of Fitzhugh & Littlejohn; but there is no explanation of these transactions to be found in the case, either from the pleadings, evidence or findings of the referee.

These defendants, however, after stating that they are purchasers of the premises in question, claim, in their answer, that the notes and drafts which constitute the alleged indebtedness from Fitzhugh & Littlejohn to the City Bank, covered by the terms of the two mortgages in question, are

void for usury ; being renewal notes and drafts given to take up other paper which the bank discounted under an usurious agreement, by which the bank exacted a premium (by way of selling exchange on New York,) of one half of one per cent over and above the regular rates of interest or discount thereof.

There is no finding of facts by the referee by which we know the terms of the alleged usurious agreement ; or whether the notes and drafts established on the trial, were renewals of prior notes and drafts alleged to be usurious. I suggested, on the argument, to the learned counsel for the appellants, that the case was defective in this respect ; but the counsel for both parties thought the difficulty could be obviated by consent ; and that it was only a matter of form, which might be waived. The only way to avoid the difficulty is for this court to attempt to ascertain from the evidence, which is very voluminous, what the agreement was under which the original note and drafts were discounted by the City Bank ; and whether the note and drafts established on the trial were renewals of the originals. This would impose upon the court a burdensome task, and substitute a new tribunal for the determination of facts. It was the province of the referee to find the facts in this case, so far as they were deemed necessary to enable this court to pass upon the questions which the defendants desired to review on this appeal. The defendants except to the report of the referee, because it fails to find an usurious agreement ; and because it fails to find that the note and drafts, as well as the mortgages, were usurious and void. On looking into his findings, there is nothing said about it one way or the other, except the general conclusion that there is due and unpaid on said securities the sum of $10,888.72, for which the plaintiff is entitled to judgment.

Now it may be asked, what was the agreement ? The argument of the defendants' counsel does not claim that in a single transaction it would be usurious for the bank to require a note to be made payable in the city of New York ;

but it is insisted that here was a line of discounts and renewals for several months, on thirty days paper ; and drafts purchased at each renewal, giving the bank a premium of one half of one per cent for the difference in exchange ; and that it is usurious on the face of the transaction. This proposition assumes that the proof shows that the notes and drafts were mere renewals of former notes and drafts. On looking into the case, however, there is considerable evidence which tends to disprove the proposition which is relied upon to make out a case of usury. It was by no means a common thing for Fitzhugh & Littlejohn to pay old paper with the proceeds of new drafts, which are alleged to be renewals. They were engaged extensively in the purchase of grain, and other business, and had large dealings with other banks, which gave them funds in New York, out of which most of this paper was paid. I do not think the evidence necessarily tends to establish the proposition of the learned counsel for the defendants on this appeal. If, therefore, the referee has refused to find it, we cannot say that he erred in his conclusions of fact. My own opinion is, that if the defendants intended to raise the question of usury, they should have obtained a special finding of the referee, setting forth the agreement under which the debt in question was created ; or should have requested him to find it, and excepted to his refusal. (22 *N. Y. Rep.* 323. 5 *id.* 571.)

Although we have the power to reverse a judgment for error of fact, and to examine the evidence with a view to test the correctness of the conclusions to which the referee has come, we have no power to substitute a special finding of facts in the place of the facts found by the referee. On appeal to the court of appeals, that court will not regard any finding of facts, except such as shall be stated by the referee, according to the provisions of the code. (*Mills* v. *Thursby*, 12 *How.* 417.)

All that we know in this case is, that the referee has found in favor of the validity of the paper alleged to be usurious.

We do not know what conclusion he came to as to the agreement under which the paper was discounted. If there was a usurious agreement which would invalidate the paper, it is to be inferred from a mass of evidence, which involves the transactions of Fitzhugh & Littlejohn for many months, to the amount of more than a million of dollars. I have looked into the case to see if I could trace back the note and drafts in question to any time when the bank entered into an arrangement by which Fitzhugh & Littlejohn agreed to purchase exchange on New York before or at the maturity of the drafts, with which to pay them ; and I have been unable to discover such an agreement. True, they did purchase exchange on New York at various times ; and possibly there was some understanding that the bank was to obtain a benefit in this way, for discounting the paper in question. But I am inclined to the opinion that it was not imposed upon Fitzhugh & Littlejohn as a condition of the discount. At all events, I do not think we can infer such an agreement, against the conclusions of the referee. It is unnecessary to decide whether such an agreement, if found, would constitute a case of usury within the decision of the court of appeals, in *Lee's Bank* v. *Walbridge*, (19 *N. Y. R.* 134.)

There is no proof, as I can discover, to show what profit the bank made by selling exchange on New York. Before we could determine that the bank obtained a benefit from the sale of exchange, it would seem to be necessary to show what in fact the profit amounted to ; unless we are permitted to assume that the one half of one per cent was clear profit ; which I think is not to be assumed without evidence. If there is no legal difference in the value of money, whether in New York or Oswego, the advantage which the bank obtained by selling exchange may perhaps, without proof, be regarded as merely incidental ; and in fact may prove to be a losing, rather than a remunerating business. If it is not usury for a bank to require payment in New York of its discounted bills in a single transaction, it would be difficult to

Murray *v.* Barney.

maintain the proposition that usury could be predicated upon a series of transactions of the same kind. If it is shown that the sale of exchange was a profitable business, there would seem to be good ground for alleging usury where it was part of the agreement that the borrower should buy a bill of exchange as the condition of the loan. Where, however, there is no valid agreement of the kind, but merely an expectation that the borrower will probably purchase a bill of exchange of the bank when his note matures in New York, I should think the transaction would not be considered usurious. But it is unnecessary to pass upon this question in this case; for we cannot say, in opposition to the finding of the referee, that the evidence shows that the loans in question were made to Fitzhugh & Littlejohn upon any such conditions. Certainly it could hardly be claimed that Fitzhugh & Littlejohn put themselves under any obligation to purchase bills of exchange on New York, with which to pay these notes and drafts. If they did so, there were a great many occasions when they neglected to make the purchase for that purpose. It is said, however, that in order to cover up and conceal the real transaction, Fitzhugh & Littlejohn used other funds in New York to pay these loans; and then supplied the deficiency with bills of exchange which they subsequently purchased of the City Bank. It would require considerable presumption to make out such a case; and as the referee has not succeeded in detecting the subterfuge, I think this court ought not to indulge in the presumption, contrary to the conclusion of the referee. Indeed, it is not at all probable that there was any such understanding between the bank and Fitzhugh & Littlejohn. That such might be the effect of a series of loans of the kind in question, may have been foreseen by both parties; but in the absence of any agreement of the kind, Fitzhugh & Littlejohn were under no obligation to buy exchange of the City Bank in order to pay their notes and drafts in New York city. They might pay in New York with currency; or buy exchange elsewhere for that purpose; or allow

their paper to go to protest and pay it in Oswego. I do not see a single instance where they were required to buy bills of exchange of the City Bank. It would therefore be contrary to the intendment of the law, in such a case, for this court to presume that there existed an usurious agreement of the character suggested.

In my opinion there is nothing in the case which would authorize this court to reverse the judgment against the finding of the referee, on the question of usury.

But if there was sufficient evidence to make out a case of usury, it is very questionable whether *Barney, Hubbard* and *Durbin* are in a position to avail themselves of the defense. Fitzhugh & Littlejohn, who have a right to waive the defense, have done so by omitting to plead usury in this case. It is admitted that where the vendee of lands takes the lands subject to the usurious security, he cannot defend against it. (9 *Paige*, 145.) But it seems that the borrower may transfer to his purchaser the premises in such a way as to invest the purchaser with a right to defeat the usurious security. In this case, Fitzhugh & Littlejohn conveyed the premises to young Fitzhugh, with covenants of warranty against the incumbrance of the two mortgages in question ; and young Fitzhugh afterwards quit-claimed to Barney, Hubbard and Durbin. If the conveyance had been genuine, and if it had appeared that young Fitzhugh was a purchaser for value, I should incline to the opinion that he could have defended against the mortgages ; and that perhaps Barney, Hubbard and Durbin, under their quit-claim, might have occupied his position. The evidence, however, fails to show that *Henry Fitzhugh, jun.* was a purchaser for value ; and when his purchase is taken in connection with the subsequent assignment to Barney, Hubbard and Durbin, it tends very strongly to suggest that the deed from Fitzhugh & Littlejohn to young Fitzhugh was a voluntary conveyance ; and I think when he afterwards quit-claimed to Barney, Hubbard and Durbin, to carry out the purpose of that assignment, he must be regard-

ed as holding the title simply in trust for Fitzhugh & Littlejohn up to that time.

The real transaction, then, was an assignment by Fitzhugh & Littlejohn of the lands in question, with other property, to Barney, Hubbard and Durbin, for the payment to them of $25,000. And the question remains whether they, as assignees, can defend the mortgages on the ground of usury. As they took that assignment "subject to any indebtedness of the said Fitzhugh & Littlejohn to the said City Bank," I do not think they are in a position to set up usury in this case. (*Sands* v. *Church*, 2 *Selden*, 355, 6, *and cases there cited.*) In my opinion they must be regarded as assignees of Fitzhugh & Littlejohn, and not as purchasers from Henry Fitzhugh, jun. It would hardly be contended that they could claim the benefit of the covenants in the deed from Fitzhugh & Littlejohn to Henry Fitzhugh, jun. So far as the evidence speaks, it tends strongly to show that the conveyance from Henry Fitzhugh, jun. to Barney, Hubbard and Durbin, was a part of the assignment, and that Fitzhugh & Littlejohn, up to that time, retained the whole beneficial interest in the land covered by the two mortgages in question.

There is another question made on the argument and suggested in the defendants' exceptions; and that is, that the balance unpaid is not covered by the mortgages. It is said that the terms of the mortgage are too indefinite. But it was held in the *Bank of Utica* v. *Finch,* (3 *Barb. Ch.* 294,) that a mortgage might be taken for future advances for a specific sum of money sufficiently large to cover the amount of the floating debt intended to be secured thereby; and that such future advances will be covered by the lien, to the extent of the sum mentioned in the mortgage, in preference to any claim under a junior incumbrance with notice. (*Id.* 297, 303. *Robinson* v. *Williams,* 22 *N. Y. Rep.* 380.) If the condition of the mortgage had been to secure future advances to a certain amount, and that amount had been advanced, it seems that it would not be competent to show by parol that it was

intended also to secure a further indebtedness, so as to give it a preference over junior incumbrances.    (*Truscott* v. *King*, 2 *Selden*, 147, 161.)

The condition of the mortgage in question was to pay " any money or moneys that might thereafter be loaned or advanced by the said bank to the said Fitzhugh & Littlejohn on notes, drafts, checks or otherwise, when the same should become due and payable, not exceeding the sum of $50,000," as well as prior loans and advances to that amount.    I think this language is broad enough to cover any balance which did not exceed that sum, and that the parties intended to provide for a floating debt within that limit.    Whether the condition of the mortgage could be extended to cover debts not within its very terms, by a contemporaneous or subsequent parol agreement, does not arise in this case ; and may perhaps be regarded as settled in the negative, in *Truscott* v. *King*, above cited. The demands established in this action arose before the defendants Barney, Hubbard and Durbin took a conveyance of the premises ; and I think they took the conveyance and assignment subject to the mortgages, and to the payment of the balance reported due thereon by the referee.

The judgment should be affirmed.

[ONONDAGA GENERAL TERM, July 2, 1861.   *Bacon, Allen, Mullin* and *Morgan*, Justices.]