Rockingham,
No. 5808.

Sidney S. Earnshaw

*v.*

First Federal Savings and Loan Association *& a.*

Argued October 2, 1968.
Decided January 31, 1969.

*Harkaway, Barry & Gall (Mr. Joseph F. Gall* orally), for the plaintiff.

*Winer, Lynch & Pillsbury (Mr. Robert W. Pillsbury* orally), for the defendant.

Kenison, C. J.   The question presented in this case is whether advances made by a construction loan mortgagee under a mortgage given to secure obligatory future advances to the mortgagor have priority over a mechanic's lien even though some of the advances were made after the lien attached. The

litigation originated by a petition for declaratory judgment by the plaintiff who supplied plumbing and heating supplies and labor to the defendant, American Homes Co., Inc., which was the owner of the property mortgaged to the defendant bank. The plaintiff and the defendant bank submitted an agreed statement of facts and the Court (*Leahy*, C. J.) reserved and transferred without ruling the question of law raised thereby.

On July 18, 1963 American Homes executed a mortgage and note to the defendant bank in the amount of $22,000 to finance the construction of a house on its property. At that time the defendant bank stated to the mortgagor that it would disburse the mortgage sum of $22,000 at various stages of completion of the house at the rate of 10%, 20%, 40%, 10%, 10% and 10%. The mortgage was recorded the next day and the bank distributed the construction loan in the percentages stated above, beginning in July 1963 and ending October 4, 1963, the final two payments each of $2,200 being made on September 19 and October 4, 1963. The plaintiff contracted with American Homes to complete the plumbing and heating on the house being constructed. His work in the amount of $1,320 commenced on September 12 and was completed on September 26, 1963. This amount was never paid and the plaintiff brought suit to enforce his mechanic's lien on November 27, 1963.

RSA 479:3 is a statute of ancient lineage. *Leeds* v. *Cameron* (1839) 3 Summ. 488, Fed. Cas. No. 8,206; Statute of July 3, 1829 in Laws N. H. *ed.* 1930, *p.* 486. It prohibits a mortgage for future advances " . . . except as herein provided." The prohibition against future advances has been considerably limited by RSA 479:4, 5 as amended. In *Peaslee* v. *Evans*, 82 N. H. 313, the court ruled that RSA 479:3 does not apply to a mortgage for obligatory future advances pursuant to a contractual obligation made at the time the mortgage is executed and recorded. That decision held that such a mortgage took priority over a subsequent mechanic's lien, including advances made after the perfection of the lien and that the obligation to make the advances did not have to be stated in the mortgage. This decision has been followed in *Messier* v. *Ledoux*, 86 N. H. 115 and *Peterson* v. *Reilly*, 105 N. H. 340, 347.

The plaintiff recognizes that *Peaslee* v. *Evans*, 82 N. H. 313 is authority for the defendant bank and an obstacle to his recovery but urges that we reexamine the case. This we have done

and conclude that the doctrine stated therein is viable, consistent with recent legislation and has substantial modern support today. We reaffirm it. Accordingly we hold that the defendant bank's mortgage has priority over the plaintiff's mechanic's lien.

"The mortgage to secure future advances is one of the most useful security devices for extending long-term credit. Its utility as a construction-loan mortgage is alone sufficient reason to justify its existence." Note, Mortgages Securing Future Advances-A Need For Legislation, 47 Iowa L. Rev. 432, 450 (1962). A mortgage securing future obligations has become a common business device and has been recognized to have distinct advantages for both mortgagor and mortgagee. Osborne, Mortgages, *s.* 113 (1951). "The advantages of such arrangements in which the borrower wants only a fraction of the loan to begin with but will need more in the future are numerous and substantial. The mortgagor saves interest on the surplus until ready to use it and escapes the burden of proper investment of it for the interim. He also avoids the expense and inconvenience of refinancing the mortgage so as to include the additional needed sum, or, in the alternative, of executing second and later mortgages for each new advance with attendant higher interest rates and financing charges . . . . The mortgagee, on his part, minimizes the bother and costs of frequent financing (which even though not borne by him tend to discourage borrowing). Further, he has the ability, especially important in building loans, to pay out the money piecemeal as the value of the property is increased by construction rather than handing over the full amount of the loan at once, when the unimproved property is insufficient security, and relying on the honesty and continued solvency of the mortgagor until the proceeds are applied to the agreed improvements." Osborne, Mortgages, *supra, pp.* 276-277.

In this case, as in *Peaslee* v. *Evans, supra,* the mortgagee was contractually bound to make the future advances which the mortgage secured and its priority is not lost because some of them were made subsequent to the mechanic's lien. This rule is supported by a wealth of authority, new as well as ancient. Annot. 80 A.L.R. 2d 179, 191; 3 Glenn, Mortgages, *s.* 402 (1943); 5 Tiffany, Real Property, *s.* 1432 (3d *ed.* 1939); 9 Thompson, Real Property, *s.* 4748 (1958).

The criticism of this rule has sometimes been that it is misleading to subsequent creditors. But as has been pointed out the

creditor is entitled to know the worst concerning the mortgagor's financial status and this is achieved through the knowledge of the outside figure recorded in the mortgage. 3 Glenn, Mortgages, s. 397 (1943); 36 Conn. B. J. 463 (1962). The equities between a subsequent creditor and a mortgagee have been given consideration by the Legislature and it has not evidenced any intent to restrict the mortgagee's rights in this situation. RSA 479:4, 5.

RSA 479:4 reads as follows: "PRIORITY. Any sum or sums which shall be loaned by the mortgagee to the mortgagor at any time after the execution of any mortgage hereafter made shall be equally secured with and have the same priority as the original indebtedness, to the extent that the aggregate amount outstanding at any one time when added to the balance due on the original indebtedness shall not exceed the amount originally secured by the mortgage." Since the parties have not argued the question we find it unnecessary to decide whether the mortgagee's priority in this case is mandated by this statute. Upton, The Real Estate Mortgage for Future Advances versus the Mechanic's Lien, 5 N. H. B. J. 70, 76-77 (1963).

*Judgment for the defendant.*

All concurred.