———————— O ————————

### Windsor County, February Term, 1828.

#### Henry Hanchet vs. Calvin Whitney.

That notice to quit, in case of a tenancy from year to year, must be given six
calendei months before the year expires—and it must *point* to the time when
the tenant must quit.

That such notice must be given, or the action cannot be maintained.

This was an action of *ejectment* for lands in *Hartland*, in which
a new trial was granted a year ago. Such trial was had, and a
verdict returned for the plaintiff; and the cause came up to this

Windsor Feb. 1828. } court upon a new bill of exceptions, in some *Hanchet* vs. *Whitney.* } degree variant from the former one which has been reported : but the allusions to the facts, and charge of the court, are sufficiently intelligible without a full copy of the case.

*Everett* and *Cushman for the defendant.* It was admitted that the defendant was tenant from year to year, under *Jonathan Whitney,* from the fore part of April, and the only question is whether *Calvin Whitney* had legal notice to quit.—Action commenced 5th April, 1826, *Jonathan Whitney* conveyed to plaintiff 20th March, 1826. Defendant is son of *Jonathan Whitney,* who was old and infirm, and he took care of him, and carried on the farm.

The evidence of *Betsey Rogers* proves—That in February, 1825, she lived at the house four weeks, and then said *Jonathan* frequently, when intoxicated, and at no other time, told the defendant to *clear out,* he would not have him there, and that he was intoxicated every day, but continued to live there as before.

The evidence of *L. Wood,* proves—That in September, 1825, on an occasion of defendant's scolding at said *Jonathan,* he told defendant to clear out—for he would not have him there; and that he was not then intoxicated.

It is also proved—That at other times, after 5th October, 1826, on occasion of quarrels, he used the same expressions ; and after the quarrels were over, he continued to live with defendant as before : all which evidence was objected to, but was admitted by the court—That during the whole time said *Jonathan* lived with defendant, the said *Jonathan* was in habits of frequent intoxication, and when so, would frequently use the expressions testified to : but when sober, did continue to live with him as before, not repeating such declarations—and that they had been always treated by the defendant as the effect of passion or intoxication.

It has been decided in this case that the defendant must have six months notice to quit ; and, of course, the only testimony, applicable to the case, is that of *Rogers* and *Wood.* The fact of the intoxication puts *Rogers'* testimony out of the question, and hence, it is believed, the charge was erroneous, viz : " that if *Jonathan* knew what he said, and made himself understood by the defendant, defendant ought to have regarded it." The testimony of

*Wood* was that the declarations were given
in a quarrel. The son could not reason-
ably suppose they were in earnest. The court charged the jury
further, "that said testimony was proper to confirm the idea of an
actual intention to put an end to the tenancy." The contrary
conclusion is contended for. The evidence offered by defendant
was proper and pertinent to shew how the declarations had been
treated by the defendant, and acted upon by both parties. It is
not probable that either party thought of the necessity, or knew
the effect, of notice. The notice was, if notice at all—a notice to
quit forthwith ; and not at the end of the year. It was the ex-
pression of a present intention, and so was that of February,
1825.—1 *T. R.* 159, *Right* vs. *Darby et al.* The conduct of
the parties was a waiver of notice, certainly of that of Feb. 1825,
6 *T. R.* 219, *Goodright* vs. *Cordwent.* But the court charged,
that what was testified to by *Rogers* was in sufficient season.

*Leland* and *Hubbard, for the plaintiff.* The defendant com-
plains, That the court excluded testimony tending to prove that
*Jonathan Whitney* was in the habit of frequent intoxication, and
at those times, and no other, he told the defendant to *clear out*—
That the court refused to charge the jury, that the defendant's
possession was adverse to plaintiff's, and consequently, the deed
was void,—and that the notice proved, if any, must be consider-
ed as a notice to quit forthwith, &c.

As to the question of intoxication, it was left to the jury, under
the explanation of the court. And there was no evidence of an
adverse possession to bring the case within the statute, but a hold-
ing under *Jonathan Whitney.*

1. In a former trial of this cause, (*Aik. R.* 240.) the court
settled this case to be a parol tenancy from year to year, and
that six months notice was necessary to be given to quit, before
suit was brought. This case finds that the tenancy commenced
on or about first of April 1821, and that notice to quit was given
six months before the first of April, 1826.

2. There is no specific time mentioned in the notice for the de-
fendant to quit ; nor was it necessary ; but the court charged the
jury—*That the general expressions of order to quit, as testified
by the witnesses, would, if believed by the jury, impart a notice to*

QQ

Windsor, Feb. 1828.
Hanchet vs. Whitney.

*quit at the end of the year, &c.* It is sufficient for the plaintiff to prove his having given six months notice to quit, and that the ejectment has been brought after that was expired.—*Woodf*, 171-2.—*2 Esp. R.* 589, *Doe, ex dem.* vs. *Butler.* It is not necessary to specify any particular day or time, when a tenant must quit: it is sufficient that notice is given six months before suit brought.—*Woodf.* 171.—If no objection is made at the time, it is *prima facie* evidence that it is intended for the end of the year, and the tenant is estopped, unless he can shew the commencement of the tenancy at another time.—*2 Camp. R.* 559, 647.

3. The charge of the court, as to the legal effect of the expressions used in the notice, was correct. The jury find the fact of notice, and the time it was given. But the court are to decide upon the legal effect of the notice, and what shall constitute such legal notice. The construction of the words used is a question of law. No particular form of words is essential, either in a writen or parol notice.

4. The court are to construe the effect and intention from the circumstances of the case—1. The words used are general—2. There being full six months before suit brought.—3. A frequent repetition of similar language afterwards, to a short time before suit.—4. That no rent was paid or reserved after suit brought. 5. That *Jonathan Whitney* left the defendant before time expired or suit brought.—6. The suit brought after the expiration of the time at a proper and suitable season.

5. What constitutes a reasonable notice to an endorser of a bill of exchange, or promisory note, is a question of law—not of fact. The jury find the fact, and the court decide upon the sufficiency. In this case, the jury have found the facts of notice and time—and the court must decide upon the sufficiency of the notice.

HUTCHINSON J. delivered the opinion of the court. This action, which is ejectment for lands in *Hartland*, comes up to this court on the exceptions filed in the County Court upon a jury trial there.

There is virtually but one question now to be decided; that is, whether the testimony adduced to show a notice to quit was sufficient for that purpose if believed by the jury?

No question is now made but that the $\Big\{$ defendant, for four or five years before the commencement of the action, had been tenant at will to his father of the premises in question; and according to the decision of this court in the same cause a year ago, was entitled to notice to quit before an action could be maintained against him on account of his possession.

The testimony adduced, for the purpose of showing such notice, appears by the case to be several instances in which the father of the defendant, from whom the plaintiff derives his title, told the defendant to clear out, to leave the premises : that he would not have him there, &c. and other similar expressions recited in the case. Some of these conversations being more than half a year before the action was brought, and more than half a year before the first of April, 1826 ; and the jury having by their verdict found these facts as testified, under the charge of the court, by which they were instructed that, if they believed these witnesses, it was a sufficient notice to quit; the question is narrowed down to this, whether these sayings of _Jonathan_, the father, amounted to sufficient notice. The objections to their sufficiency are, that they set no time at which the defendant must quit : and further, that they import an immediate quitting, and allude to no future period whatever. The views of the County Court must have been, that a general announcing to the defendant that he must quit the premises, and this more than half a year before the end of the term, would be good notice for him to quit at the end of the year.

It is very important that this subject should be regulated by principles, practical in themselves, as well as conformable to law. The authorities cited by the defendant's counsel, to which may be added 2 _Phil. Ev._ 182, _and on_; also, _Norris' Peake_, 527, lay down the rule that notice must not only be given half a year beforehand, but that notice must be to quit at a given time, which they call the end of the year. They say a general notice to quit, at the end of the year, is not sufficient. The parties may differ about the time when the tenancy commenced, and when it should end. A time to quit being mentioned in the notice, if a wrong time is named, the defendant may disregard it wholly ; for the landlord

Windsor, Feb. 1828

*Hanchet* vs. *Whitney*

has no right to compel a tenant under a tenancy from year to year, to quit at any other time than the end of the year. This is reasonable, and, for the encouragement of industry; as otherwise, the tenant's crops might not be disposed of, and he would sustain an injury by quitting before the time in which he might well calculate to dispose of his crops. Upon this point the County Court erred in their instructions to the jury. But they correctly refused to charge as requested about the defendant's adverse possession. There was no testimony tending to show his possession adverse to *Jonathan*, his father, under whom he took possession by contract, and under whom the plaintiff claims.

With regard to the testimony excluded by the County Court— that part relating to *Jonathan* and *Calvin's* continuing to live together after the affrays mentioned were over, if the defendant would infer from this a waiver by *Jonathan* of such notice as he had given, it might be proper to have admitted it; but such testimony was already before the jury, drawn from the plaintiff's witnesses. That part which relates to *Calvin's* always treating the father's telling him to quit, &c. as the effect of passion, was correctly excluded. If what was said by *Jonathan*, from time to time, did not amount to notice, this testimony must be unimportant. If it did amount to notice, the defendant must, at his peril, treat it as notice. It is no excuse for him to say he treated it as the effect of passion. The notice given might be the effect of passion, and yet be a regular notice to quit half a year hence, at the end of the year, and at a time certain. But what was claimed, as notice in this case, contained no fixed time for quitting, nor did it even refer, in general terms, to the end of the year. Therefore, a new trial is granted.

*Everett* and *Cushman*, for defendant,

*Leland* and *Hubbard*, for plaintiff.

