ELMER D. KEYES AND ANOTHER *v.* D. W. BUMP'S ADM'R AND OTHERS.

[IN CHANCERY.]

*Homestead. R. L. s. 1894. Mortgage. Future Advances. Consideration.*

1. To acquire a homestead in premises they must be used or kept for a family home; and it cannot be gained by a mere intention to occupy them at some indefinite future time. There must be a present use of the premises, or the keeping of them for that purpose with a present right to use them.

2. MORTGAGE. CONSIDERATION. FUTURE ADVANCES. As between the parties and their representatives, the consideration named in a mortgage does not determine the amount of a mortgage given for both present and future indebtedness; but the mortgage stands as security for the liabilities incurred under the contract set forth in the condition; and is not, when of record, notice of the amount due upon it, nor a limitation of the amount secured thereby.

PETITION to foreclose two mortgages. Heard on a special master's report, September Term, 1886, VEAZEY, Chancellor. Decree *pro forma* for the orator for the amount reported by the master, and interest, which was $916.08. The master found as to the indebtedness, etc., as follows:

" The petitioners claim an indebtedness under said mortgages of $916 08-100, with interest from June 2d, 1886. Said claim is shown by the statement of account and note.

Said claim is correct in amount." ·

          *          *          *          *          *          *

" Under said mortgages said Bump was to have credit with E. D. Keyes & Co. up to $800. It was understood that he was not to exceed that amount in notes and accounts taken together."

The other facts are sufficiently stated in the opinion.

*L. W. Redington*, for the defendants.

In any event the petitioners are not entitled to a decree over $800. 1 Jones Mort. 344, 364, 384; *Beck* v. *Frost*, 18 Johns. 544. A verbal agreement as to advances is sufficient. 1 Jones Mort. 374; *Platt* v. *Grif*, N. J. Eq. 207; *Mix* v. *Cowles*, 20 Conn. 420–427.

In ascertaining whether premises have been kept as a homestead the intention of the party making the claim is necessarily an important element for consideration. *Whiteman* v. *Field*, 53 Vt. 554; *West River Bank* v. *Gale*, 42 Vt. 27. Certain facts are pertinent and material on the question of intention. 53 Vt. 557; *Rice* v. *Judd*, 57 Vt. 11.

There must be a purpose of returning to or keeping the place a homestead. *Vancy* v. *Trustees*, 59 Ill. 188. Continuing to use a homestead for storing furniture after husband's death comes within the statute. *Bret* v. *Fox*, 100 Mass. 234. A homestead may exist if part of a building is rented to tenants; the homestead is not necessarily limited to that portion of the dwelling occupied by the family of the owner. *Mercier* v. *Chose*, 11 Allen, 194.

*Lawrence & Meldon*, for the petitioners.

While Bump had neither the possession, or right of possession this would bring the case within the rule laid down in *Bugbee* v. *Bemis*, 50 Vt. 216.

Mere intention of future occupancy is not sufficient to constitute a homestead. *True* v. *Estate of Morrill*, 28 Vt. 672; 15 Reporter, 712; *Hamford* v. *Holdman*, 14 Bush, 210; *Lee* v. *Miller*, 11 Allen, 37; *Spaulding* v. *Crane*, 46 Vt. 292. The burden of proof is upon the claimant to establish the homestead. *Whiteman* v. *Field*, 53 Vt. 554.

The express conditions of the mortgage cannot be defeated by any mere understanding as to limitation of credit. 1 Jones Mort. s. 367; 31 Vt. 133; 16 Vt, 300.

The opinion of the court was delivered by

WALKER, J. This is a petition to foreclose two mortgages on certain premises described therein, and situated in Castleton, executed by D. W. Bump, the intestate of the defendant administrator; one to E. D. Keyes and N. R. Bardy, dated June 29, A. D. 1880; the other to E. D. Keyes, C. A. Perkins and C. E. Keyes, dated September 23, 1885; both conditioned for the payment of money then due the mortgagees, and which should thereafter become due them from the mortgagor on account of goods sold and delivered by them to him, and for the payment for all goods thereafter sold and delivered by them to him, and for the payment of all notes and renewals thereof which the mortgagor was then, or thereafter should be, owing to them, and for all money then due, or thereafter to become due to them from him for whatever cause or consideration or by reason of any undertaking or liability of the mortgagor to the mortgagees. The consideration named in each of said mortgages is $800; and it was understood that Bump was to have credit with the mortgagees to that amount, and that he was not to exceed that amount in notes and accounts taken together.

The mortgagor, Bump, died November 2, 1885, leaving a

widow and minor child, who now claim a homestead in the premises thus mortgaged by him. Bump and his wife never lived on the premises in question, and she did not join with her husband in the execution of the mortgages. Bump bought the premises in the spring of 1880, which then consisted of about one-half acre of land, and he owned no other real estate at the time of his death nor at the time of the execution of the mortgages. At the time he bought the premises his family lived in a house in Castleton, near the mortgaged premises, which he rented, and where they continued to live until his death. In the spring of 1880, immediately after buying the premises, the intestate erected the two-story wood building now standing thereon. The lower story was then finished as a country store, and was thereafter occupied as such by him. In the winter of 1883–4, the second story of the building was finished, and its arrangements adapted to and made suitable for occupation by a family. In January, 1884, upon the completion of the second story, Richard Gleason moved into it as a tenant under a parol contract between him and the intestate, by which he was to pay $50 a year rent, $4 to be paid each month for eleven months, and $6 for the twelfth month. And without other or further agreement he continued to occupy it with his family, and pay rent until December 17, 1885. The building was not otherwise occupied during the lifetime of the intestate, except the room first finished up stairs was occupied for a short time by Mrs. Bump's brother.

I. It fully appears, from the master's report, that at the date of the execution of the first mortgage the building on the premises was used by the intestate only for the purposes of a country store, and that at the date of the execution of the second mortgage the intestate was using the lower story for the purposes of a country store, and Gleason was in possession of the second story as a tenant, paying rent under a tenancy which had ripened into a tenancy from year to year. *Hanchett* v. *Whitney*, 2 Aik. 240; Ib. 1 Vt. 311; *Bree* v. *Lees*, 2 W. Black. 1171; *Den* v. *Drake*, 2 Greene (14 N. J. L.) 523.

The premises were not used by the intestate as a homestead in his lifetime.

The master finds that during a period embracing the dates of the execution of both of the mortgages in suit the intestate had an intention, at some indefinite future time, when circumstances should be favorable to his doing so, to occupy the second story of the building with his family as their home.

It is contended by the defendants that the intention of the intestate to occupy the second story of the building on the premises as a family home at some indefinite future time was a keeping of the premises as a homestead within the meaning and spirit of the statute.

We think this contention is not sound.

The homestead right which passes to and vests in the widow and minor children of the head of the family dying intestate is defined in the statute as "A dwelling-house, out-buildings, and the land used in connection therewith, not exceeding five hundred dollars in value, and used or kept by such housekeeper or head of family as a homestead." The statute requires more than the naked intention of the head of the family to make the premises his family home at some indefinite future time to establish a homestead right. One of two conditions is essential to the existence of a homestead right under the statute. There must be either an actual personal use by the head of the family of a dwelling-house and lands appurtenant as a family home, or an actual keeping by him of the same for a family home with the present right and purpose of so using it. A personal use is not claimed in this case, and the facts do not show a keeping of the premises with a present right and purpose of using them as a family home.

To give the construction contended for to the word "kept" would be adding an additional ground or condition to the statute for acquiring a homestead and establish a dangerous precedent in this class of cases as the intention of the head of the family being locked up in his own breast would not be known to or readily ascertainable by persons dealing with him.

Such a doctrine would be productive of fraudulent claims to homesteads upon testimony that would be difficult to meet and practically disprovable.

The homestead right is not lost by a temporary removal with an intention to return and make the premises a home again, when accompanied with an actual keeping for that purpose, but where the premises have never been used or kept as a homestead by the head of the family he can acquire no right to a homestead therein by a mere intention to use them as such at some indefinite future time.

In *Spaulding* v. *Crane*, 46 Vt. 292, Judge WHEELER, in speaking for the court upon the question of the effect of the intention of the head of the family in respect to a homestead, says : " It would seem to have been the design of this statute to make the power of the husband to alienate or mortgage without the wife's joining readily ascertainable by finding whether the premises were occupied by him as a residence without leaving it to depend upon his intentions, which might be known only to himself, and about which his expressions might not bind or stop other persons with whom questions concerning his power might arise."

This argument applies with the same force to the statute in its present form as it did to the statute when it required the personal occupation of the premises in all cases to establish the homestead right. Nothing short of the present use of the premises, or the keeping of them for that purpose with a present right to so use them, will give to them the character of a homestead, so as to cut off the right of the owner to mortgage them without his wife's joining in the mortgage. Neither of these conditions exist in this case. The petitioners' mortgages are therefore considered valid against the homestead claim set up by the defendants.

II. The defendants insist that the petitioners are not entitled to have the mortgages foreclosed for a sum beyond $800, the consideration named in the mortgages ; 1st. Because it was understood that the intestate should have credit on the mort-

gages up to $800, and was not to exceed that sum; 2d. Because the consideration named in the mortgages in law limits the security to that sum.

We think otherwise. There is no finding that there was any understanding between the intestate and the mortgagees that the mortgages should not stand as security for future advances or future indebtedness beyond the sum of $800, in case the indebtedness should exceed that sum, and therefore the mortgages must stand as security according to the contract mentioned in them. The conditions of the mortgages are sufficiently definite under our system of registry. They show a certain and definite contract between the parties that the mortgages shall stand as securitiy for both present and future indebtedness on account of goods then sold and delivered, and thereafter to be sold and delivered by the mortgagees to the intestate, and for all notes and renewals then owing, or which the intestate might thereafter be owing to them on account of their future dealings. There is no difficulty in ascertaining from the conditions the amount of the incumbrance intended to be secured. It was clearly the intent of the parties that the mortgages should stand as security for both present and future indebtedness of the classes described; and although the amount is not limited, they must stand between the parties and their legal representatives for the full amount of the indebtedness contracted by the intestate upon the security of the mortgages, which the master finds is $916.08. That mortgages may be given to secure future advances and contingent debts, as well as debts which already exist, and are certain and due, has long been well settled. Mortgages of this class, like mortgages of indemnity and mortgages to secure against official neglects, must necessarily be to secure sums indefinite and uncertain in amount at the time the mortgages are executed. To limit the extent of the incumbrance, and require it to appear in the mortgage would largely defeat the beneficial effects of such mortgages. The law does not require it. The whole current of authority is opposed to it. 1 Jones on Mortgages, 373; *McDaniels* v.

*Colvin*, 16 Vt. 300 ; *Conard* v. *Atlantic Ins. Co.*, 1 Peters, 386 ; *Shirras* v. *Caig*, 7 Cranch, 34 ; *Robinson* v. *Williams*, 22 N. Y. 380.

No question arises in this case as to the rights of subsequent mortgagees or attaching creditors ; and their rights under such a mortgage as against advances made by the mortgagee after notice of a subsequent mortgage or attachment are not considered here.

. It is a well settled principle that the real consideration of deeds and mortgages may be shown although different from that expressed in the instrument. The consideration named in the instrument is never conclusive. It is open to the utmost limit of inquiry. *Stevens* v. *Griffith*, 3 Vt. 448 ; *Wood* v. *Beach*, 7 Vt. 522.

The consideration named in a mortgage is not determinative of the amount of the mortgage, nor is it, when of record, notice of the amount due upon it, nor a limitation of the amount secured thereby.

A mortgage given to secure the sum named in the consideration clause may be half paid a week after it is executed, so that it will stand as security for only half the consideration named, or it may be one of long standing, with a large accumulation of interest upon it, making the amount due upon it double the consideration named in the mortgage, so that it would stand as security for double the consideration named.

In a mortgage for future advances the sum or amount named as the consideration is of no moment, as the mortgage stands as security for the amount of the liabilites and indebtedness incurred under the contract set forth in the condition, whatever the sum may be. It is not essential, even, that any amount be named in the consideration clause of the mortgage. This point was distinctly ruled in *Robinson* v. *Williams*, 22 N. Y. 380. The consideration named in the mortgage given in that case was $1, and it was given to the Hollister Bank to secure future discounts and advances by the bank to the mortgagor ; and the court held that a mortgage given to secure future ad-

vances, the limit of which is not defined therein, is good for the amount of the advances thus made.   The same doctrine is sustained in *McKinster* v. *Babcock*, 26 N. Y. 378 ; *Miller* v. *Lockwood*, 32 N. Y. 293 ; *Shirras* v. *Caig*, 7 Cranch, 34, and in many other cases.

The petitioners are entitled to a decree of foreclosure against all the defendants for the amount found due by the master.

The decree of the Court of Chancery is affirmed and cause remanded.