## WOLFE v. BANK OF ANDERSON.

### In re BEATTY.

(Circuit Court of Appeals, Fourth Circuit. December 13, 1916.)

### No. 1472.

BANKRUPTCY ☞165(4)—PREFERENCES—ASSIGNMENT OF ACCOUNTS—SUBSTITUTION.

Where, by the course of dealings between a bank and a merchant, the latter assigned accounts due him to secure his notes to the bank, but was permitted by the bank to collect the accounts and use them in his business, or to apply them on the notes as he saw fit, and it appeared that substantially all the accounts assigned more than four months before the mer-

chant's voluntary bankruptcy had been so collected and applied by him before the assignment of new accounts within the four months period, at which time the bank had knowledge of the merchant's insolvency, the latter assignment cannot be sustained on the theory that those accounts were merely substituted for accounts previously assigned, since there were then no assigned accounts for which they could be substituted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 266; Dec. Dig. ☞165(4).]

Appeal from the District Court of the United States for the Western District of South Carolina, at Greenville, in Bankruptcy; Joseph T. Johnson, Judge.

In the matter of Raymond Beatty, bankrupt. From a decree of the District Court, setting aside the report of the referee and allowing the claim of the Bank of Anderson against the estate, S. M. Wolfe, trustee in bankruptcy, appeals. Reversed and remanded.

Ernest F. Cochran and S. M. Wolfe, both of Anderson, S. C. (Quattlebaum & Cochran, of Anderson, S. C., on the brief), for appellant.

J. M. Paget, of Anderson, S. C., for appellee.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. March 16, 1916, Raymond Beatty, a commission merchant and broker of Anderson, S. C., was adjudicated a voluntary bankrupt. For six years and upwards he had been indebted in varying amounts to the Bank of Anderson. To secure this obligation he assigned from time to time certain choses in action, including book accounts against his customers. As to these book accounts, which are the present subject of controversy, the course of dealing was this: Beatty's debt to the bank was evidenced by notes, and when a note came due and was renewed a new list of accounts was delivered to the bank, and the former list taken up. It was understood between the parties that Beatty should collect the assigned accounts and use the moneys as he might elect, either in reducing the bank's claim or in meeting the general needs of his business, and he appears to have all along acted on that understanding. On October 21, 1915, his indebtedness to the bank was represented by two notes, dated that day, one for $6,000, and the other for approximately $2,600. The list of accounts then assigned aggregated $5,051.27, but nothing appears as to the accounts held by the bank prior to that time. On February 19, 1916, the smaller note was reduced by payments to $1,263, for which a new note of that date was executed. The list of accounts assigned at this time amounts to $4,167.18. The bank then knew, and had known long before, that Beatty was insolvent. Within a month afterwards he was declared bankrupt on his own petition.

The claim of the trustee to these accounts was sustained by the referee in bankruptcy, on the ground that the transfer to the bank was a voidable preference; but this ruling was reversed by the learned District Judge, who held that the transfer in question was a valid substitution of new accounts for those previously assigned. From this decision the trustee appeals.

For the purposes of this case it will be assumed, without so deciding, that the transaction of February, 1916, if not a forbidden preference, operated under the law of South Carolina to give the bank, as against other creditors, a good title to the accounts then transferred. It will also be assumed, as counsel for the bank virtually concedes, that this transaction taken by itself was prima facie preferential, and cannot be upheld unless there was an actual substitution of new accounts for those which the bank then held, and had the right to hold because they were acquired in good faith more than four months before the petition in bankruptcy was filed.

But the difficulty is that the undisputed facts refute the claim of substitution. On the assumption above made the bank can retain any accounts it got in October, although they were taken to secure an antecedent debt. But those accounts, for the most part, if not altogether, were not in existence when the accounts in question were transferred in the following February. Beatty in the meantime had collected the former and used the money as he saw fit. And in our judgment it does not matter whether he used it to keep his business going, or for living expenses, or to reduce his debt to the bank. The controlling fact is that the October accounts had been paid to Beatty, practically all of them, and the money expended by him, with the knowledge and consent of the bank, some time before the February transfer. When that transfer took place, the bank had nothing to surrender, for the October accounts had ceased to exist. Obviously there could be no substitution, unless the bank then held something to exchange, and that was not the case.

That this was the real situation appears from the bank's answer in this proceeding, which says, referring to the February transaction:

"That the notes and accounts were accepted in place of the old ones, which had been collected by the bankrupt and used in his business as had been the custom for many years."

It also appears from the fact that the referee, who held the bank entitled to retain the accounts assigned in October, allowed it five days to show "exactly what accounts, if any, on the present list were pledged prior to the four months period and remained pledged continuously since that time." The failure of the bank to avail itself of this offer permits but one inference. To this it may be added that, for aught the record discloses, all the October accounts may have been collected weeks before the February assignment. This being so, it is only repeating to say that there could have been no substitution in February, because the bank then had no accounts to exchange. In short, the presumption that the February transaction was a prohibited transfer is not only unrebutted, but stands confirmed by uncontradicted proof.

It follows that the decree appealed from must be reversed, and the case remanded for further proceedings in accordance with this opinion.

Reversed.