No. 29,459.

The State Bank, *Appellee*, v. G. E. Tinker et al., *Appellants*.

(292 Pac. 748.)

Opinion filed November 8, 1930.

*Lew E. Clogston,* of Wichita, for the appellants.

*S. C. Bloss, George T. McNeish* and *Stewart S. Bloss,* all of Winfield, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action to foreclose three mortgages on two quarter-section farms in Cowley county. First mortgages of $8,000 covered each of the farms, and a junior "dollar" mortgage, so called, to secure whatever further sums plaintiff might loan to defendant, covered both these properties.

In 1928, in addition to these mortgages, the lands of defendant were encumbered with certain petty liens and judgments, and the titles were complicated by various fractional interests in oil-royalty rights held by different parties. On July 14, 1928, defendant sold and conveyed one of these farms, southeast quarter, section 26, township 32, range 3 east, for $20,000, to H. J. Light. The deed contained the usual recitals of general warranty, including one that the grantors' title was indefeasible except as to encumbrances of record. Defendant placed the deed in escrow with the plaintiff bank to await the clearing of the title by foreclosure to bar all interests inferior to those of the plaintiff as assignee of the first mortgage and

as creditor and holder of the "dollar" mortgage. The grantee and purchaser, H. J. Light, paid over the $20,000 to the bank to be applied to the payment of the first mortgage on that particular farm and towards the payment of Tinker's indebtedness secured by the "dollar" mortgage. For the benefit of all concerned and by mutual agreement, the president of the plaintiff bank, who was a brother of H. J. Light, purchaser of the farm, undertook the duty of collecting some rents, royalties and proceeds of crop sales due Tinker and applying them towards the satisfaction of certain claims against him which had to be met. These included certain farming expenses, interest, commission on mortgage loan, and real-estate dealer's commission for negotiating the sale of the farm. At the time the sale of the farm was effected, the amount Tinker owed the bank, as evidenced by notes renewed from time to time and secured by the "dollar" mortgage, had swelled to $15,530; and when the president had collected and disbursed all moneys of Tinker, including the $20,000 paid for the farm, a balance of $4,679 was still due from Tinker; and one of the causes of action involved in this lawsuit was for judgment against Tinker for that amount and to foreclose the "dollar" mortgage to satisfy it.

In a lengthy answer defendant pleaded various matters of no present concern, and alleged, in substance, that on or about July 1, 1928, he made, executed and delivered to the State Bank a good and sufficient warranty deed to the quarter of land described, subject to the mortgage indebtedness of record against it, and was to receive a credit of $20,000 therefor which the bank retained and for which amount defendant was entitled to credit, and that a full accounting between defendant and the bank would reveal that he owed it nothing.

On the issues joined the cause was tried by the court. The president of the bank testified at length. Included in his testimony was a summary of receipts and disbursements of defendant Tinker's account.

Defendant offered no evidence to support his pleaded defense. The trial court made findings of fact and conclusions of law in favor of plaintiff and gave judgment accordingly.

Defendant assigns and argues certain errors. He first contends that the so-called "dollar" mortgage was not given to secure his indebtedness to the bank of $15,530. This contention, however, is directly at odds with the recitals of the instrument itself. Its terms, in part, read:

. "This indenture [dated August 17, 1921] . . . witnesseth, that the parties of the first part [defendant and wife] in consideration of the sum of one dollar ($1) and the further covenants, agreements, and advancements hereinafter specified to them duly paid, the receipt of which is hereby acknowledged, have sold and by these presents do grant, bargain, sell and mortgage to the said party of the second part, its successors and assigns, forever, all that tract or parcel of land situated in the county of Cowley and state of Kansas, . . . [two quarter sections, 320 acres described] . . . .

"This grant is intended as a mortgage to secure the payment of any sum or sums of money which may be advanced by the party of the second part, or its assigns, to the parties of the first part herein or either of them, at date hereof or from time to time, . . . it being the intention of the parties hereto that this mortgage shall secure any advancements made from time to time to the parties of the first part or either of them, by the party of the second part, however evidenced, whether by note, check, receipt, or book account, and to remain in full force and effect between the parties hereto, or assigns, until all advancements made by virtue hereof are paid in full, with interest."

That such a mortgage may be lawfully made and will be judicially enforced was settled in *Union State Bank v. Chapman,* 124 Kan. 315, 259 Pac. 681, and the error based on this phase of the judgment cannot be sustained.

It is also contended that the testimony of the president of the plaintiff bank showed that at the time this action was begun plaintiff had in its hands funds of defendant which were more than sufficient to discharge his indebtedness in full. Such was the theory of defendant's answer, but no evidence was adduced to support it. It is argued, however, that the purchase price of the farm was virtually $28,000—that is, that the purchaser was to assume and pay off the $8,000 mortgage and pay the $20,000 in cash in addition thereto. But that suggestion is directly at variance with the only testimony on the subject. The president of the plaintiff bank testified:

"Q. Who personally handled the sale? . . . A. I did, and my brother, together.

"Q. You took title in the name of your brother? A. Yes, sir. . . . .

"Q. You took this title under the deed with the exceptions of the limitations in the record, didn't you? A. The $20,000, of course, was to .clear the title. We paid them $125 an acre for the land."

This testimony was neither objected to nor disputed, and its probative value was properly considered. (*Douthitt v. Applegate,* 33 Kan. 395, syl. ¶ 6, 6 Pac. 575.)

In the case at bar the trial court's findings of fact covered the matters in controversy with painstaking detail, and these findings make it perfectly clear that at the time the sale of the farm for

$20,000 was negotiated defendant was indebted to plaintiff in the sum of $16,000 on the two first mortgages, and also $15,530 on the "dollar" mortgage indebtedness together with considerable items for interest accrued thereon, and also for taxes paid by plaintiff. Consequently the contention that at the time these foreclosure proceedings were instituted and judgment was entered defendant's indebtedness had been entirely satisfied is without merit.

But it is urged that if $8,000 of the $20,000 in cash paid for the farm was to be set aside to meet the first mortgage there was no excuse for foreclosing the first mortgage. This is a mere talking point. The simple answer to it is that no judgment for any part of that $8,000 first-mortgage indebtedness was either asked or decreed against this defendant. But he had warranted his title, and that title could only be quieted and cleared of all inferior liens and claims by an action designed to accomplish that end. This foreclosure action was well adapted to effectuate that object, and defendant has no valid ground of complaint thereat.

The judgment is affirmed.

MARSHALL, J., not sitting.