Batten *v.* Jurist et ux. (Northwestern Nat. Bank, etc., Co., Appellant).

Argued April 22, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, MAXEY and DREW, JJ.

*J. H. Buckman,* of *Buckman & Buckman,* for appellant.—A mortgage to secure a specific sum and further advances unlimited as to time and amount that may be made by the mortgagee is not valid against subsequent lien creditors for an amount exceeding the specific sum named and interest.

A careful search of the Pennsylvania authorities has failed to disclose any case ruling on a mortgage made for future advances, unlimited as to time and amount, without obligation on the part of the mortgagee to make any advances at all, and no such case is cited by the auditor or by the court below.

It seems to us that it ought to be declared that the public policy of this State is opposed to the making of contracts providing such ready means for the accomplishment of fraud and deception as are afforded by the mortgage in this case: Goodyear v. Brown, 155 Pa. 514; Prichett v. Cook, 62 Pa. 193.

The law abhors secret liens however attempted to be established: Enterprise W. Paper Co. v. Rantoul Co., 260 Pa. 540; Truck Tract. & Fwd. Co. v. Baker, 281 Pa. 145.

The loss occasioned by the false statements of the mortgagor as to the amount due on the mortgage, which were relied upon by appellant to its injury, gives appellant priority over the mortgagee: Sterling's Petition, 292 Pa. 194; Com. v. Gutelius, 287 Pa. 441; Browne v. Hoekstra, 279 Pa. 418; Truck Tractor & Forwarding Co. v. Baker, 281 Pa. 145; Froio v. Armstrong, 277 Pa. 18.

Where one of two innocent persons must suffer loss by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongder has been enabled to commit the fraud: Froio v. Armstrong, 277 Pa. 18, 24; Sterling's Petition, 292 Pa. 194, 200.

*Gordon A. Block,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellee.—The maximum amount to be advanced and the time and manner of making the advances need not be stated on the face of the mortgage: Moats v. Thompson, 283 Pa. 313; Garber v. Henry, 6 Watts 57; Land Title & Trust Co. v. Shoemaker, 257 Pa. 213.

Although no case in Pennsylvania has been found in which there was a flat ruling on the necessity of specifying the amount of the advances in the mortgage, the clear and convincing weight of authority outside of Pennsylvania holds that the statement of a definite sum is not necessary: Robinson v. Williams, 22 N. Y. 380.

The mortgagee need not be bound to make the advances: Wardman v. Iseman, 99 Pa. Superior Ct. 551.

The bank must bear its own loss when, two years after advancements to the extent of $20,000 were made under the recorded advance money mortgage, it lent sums of money to the mortgagor on the mere statement of the mortgagor that she was indebted to the mortgagee only to the extent of $5,000 and the bank made no effort to obtain further information as to the extent of the mortgage.

The bank takes the position that it did all that it was required to do to protect its own rights by taking Mrs. Jurist's statement as to the extent of the mortgage. We have already shown that this position is incorrect, and that the bank should have searched the record for the mortgage, and, having found it, should have made inquiry to determine the extent of the debt secured by the mortgage. The bank having failed to do so, this court must determine the rights of the bank just as if the bank had made such search and inquiry and had proceeded to complete the transaction regardless of what it learned.

OPINION BY MR. JUSTICE MAXEY, January 5, 1932:

This case involves the validity of a mortgage to secure future advances and its priority in lien as against a judgment creditor whose judgment attached after the advances were made. The mortgage was executed by Louise S. Jurist and her husband on June 7, 1917, and covered certain property in Philadelphia and Montgomery Counties. The mortgagee was Florentine S. Sutro. The initial obligation secured by the mortgage was a demand note for $5,000 with interest at 5%. The mortgage contained the following provision: "Whereas, the said party of the second part may hereafter, during the continuance of these presents, make further advances to the said Louise S. Jurist, one of the parties of the first part, and it is intended that the same, with interest, shall be secured thereby." Between September 14, 1917, and May 21, 1920, Mrs. Sutro made ten additional advances to Mrs. Jurist aggregating $15,000 for which she took notes. All the properties subject to the mortgage, except the property at 1308 North Broad Street, Philadelphia, were subsequently released from this mortgage lien by Mrs. Sutro as an act of friendship to Mrs. Jurist. The North Broad Street property was, before the mortgage to Mrs. Sutro was executed, encumbered with a first mortgage for $13,000 given to Henry G. Freeman,

Jr., and subsequently assigned to Joseph A. Batten, who instituted the foreclosure proceedings which constituted the basis of the present action. In 1922 Mrs. Jurist made a statement in writing to the Northwestern National Bank & Trust Company, hereafter referred to as the bank, to the effect that the entire mortgage indebtedness on the North Broad Street property was $18,000 including the $13,000 first mortgage. This statement accompanied an application for a loan. Credit was thereafter extended to Mrs. Jurist from time to time until her indebtedness to the bank amounted to more than $41,000 evidenced by a consolidated note, upon which judgment in foreign attachment proceedings was obtained against Mrs. Jurist for $44,133.99. Execution was issued on this judgment and a sale by the sheriff was had and the premises were bought by the attorney on the writ for $34,000. After paying the first mortgage and interest and costs, there was a balance in the hands of the sheriff of $16,339.76. The bank claimed that Floretine Sutro as the holder of the mortgage of June 7, 1917, was not entitled to more than the specific amount stated therein, $5,000, plus interest. Florentine Sutro claimed the balance in the hands of the sheriff in liquidation of the advances made by her subsequent to the execution and recording of the mortgage and all of which she declared remained unpaid. Interest had been paid on these advances by Mrs. Jurist until March 20, 1922. The balance in the sheriff's hands was paid into court and an auditor appointed to make distribution. The issue was between Mrs. Sutro and the bank.

The auditor found as a fact that Mrs. Sutro advanced a total of $20,000 to Mrs. Jurist, including the original $5,000. The auditor negatived the contention of the bank that the evidence supported the inference that the loan had been repaid and held that the mortgage in question was a lien which as to all advances made was prior to a judgment which attached after the advances

were made. The court below dismissed the exceptions filed to the auditor's report, confirmed that report, and decreed that the fund of $16,339.76 should be paid Florentine S. Sutro, subject to the auditor's fee of $500 and the costs of the audit.

The judgment of the court below should be affirmed. As to the first question, that is, the alleged inference of repayment of the advances, the testimony of Mrs. Sutro and her banker-husband that the money had not been repaid and the corroborating fact that they had in their possession the notes given for the advances was not overcome by any fact or inference of facts to the contrary. Nor could the statute of limitations be successfully pleaded though it is true that the last interest payment was made on the notes in March, 1922. A creditor may hold and realize on collateral pledged to recover a debt although action on the principal obligation is barred by limitation: 37 Corpus Juris, page 701; Sproul v. Standard Plate Glass Co., 201 Pa. 103. Neither is Mrs. Sutro bound by the statement made by Mrs. Jurist to the bank in July, 1922, to the effect that the mortgage indebtedness on her Philadelphia property was then only $18,000, including the first mortgage indebtedness of $13,000. On no theory of law or logic can Mrs. Sutro be estopped by false statements of another when she was not privy to them.

The appellant's chief contention is that a mortgage to secure a specific sum and also to secure further advances unlimited as to time and amount is not valid against subsequent lien creditors for an amount exceeding the specific sum named and intererest thereon.

While much may cogently be said about the impolicy of legally recognizing such mortgages and some states have by statute denied them legal recognition, such mortgages have long received judicial sanction in Pennsylvania.

In Garber v. Henry, 6 Watts 57, a mortgage for future advances was upheld. It is true that there the mortgage

referred to articles of agreement in which the future indebtedness to be secured by the mortgage were specifically set forth. But this agreement was not recorded and one about to become a junior creditor would have to exercise diligence to ascertain the extent of the then existing encumbrance.

In Land Title & Trust Co. v. Shoemaker, 257 Pa. 213, this court upheld the validity of a mortgage of $40,000 given to secure a loan of $32,000 and to secure "future obligations" of the mortgagor. Subsequently a second mortgage was executed on the same property. The second mortgagee had notice that only $32,000 was loaned on the first mortgage. The mortgagor later became actually indebted to the first mortgagee for a large amount on a bond of indemnity given the mortgagee by the mortgagor a few years after the execution of the first mortgage but before the making of the second mortgage. The property was sold in foreclosure proceedings on the first mortgage. The first and second mortgagees became rival claimants for the amount remaining after the payment of the $32,000 which was the debt actually existing when the first mortgage was executed. It was held that a potential obligation such as that created by the bond of indemnity related back to the time of the execution of the mortgage and that the first mortgagee had the superior claim on the balance for distribution after the original loan of $32,000 had been paid. This court said on page 219 that "it is now established in Pennsylvania that, when a contract for advances or the assumption of future obligations accompanies a mortgage, it is not essential to its validity that the engagement governing the advance be placed upon record, or even expressly referred to in the mortgage (Moroney's App., 24 Pa. 372) ; it is also established that, when such a contract obligates the mortgagee either to make advances or assume future responsibilities on behalf of the mortgagor, this lends a sufficient consideration to the mortgage, and the lien of payments made under such

an agreement relates back to the date of the mortgage; furthermore, this is true even though the advances or liquidation of assumed responsibilities occur after the date of a subsequent or junior encumbrance placed upon the mortgaged premises."

In Moats v. Thompson, 283 Pa. 313, we have a case where a mortgage was given as security for a definite sum then owing and also for other "indebtednesses" possibly later to be incurred. There was no obligation to extend further credits and no limitation as to the dates and amounts of these further credits. However, the question of the effect on the mortgage's validity of the absence of limitation of amount of the prospective credits was not raised nor decided. In that case opposing counsel conceded the validity of a mortgage given to secure future advances as well as to secure contemporaneous indebtedness, but contended that when the mortgagee is not bound to make advances, any advances made relate in lien to the actual date of the advancement instead of the date of the mortgage and are subject to all intervening encumbrances. This court held that no rights of intervening encumbrances was involved in the Thompson Case but that the issue was between the assignee of Hackney, the mortgagee, who had made a loan to Thompson of $160,000, the debt being evidenced by eight notes of $20,000 each signed by Thompson and two sureties for him, and those who in the record represented the rights of one of these sureties. When the mortgage was executed and the eight notes given, Hackney, the mortgagee, did not hold any other notes made by Thompson but he had incurred collateral obligations on other Thompson notes. These contingent obligations later became absolute and were paid by Hackney. He endorsed certain of Thompson's notes after the original eight notes were executed and these he also subsequently paid. All these could therefore be classed as "future advances." The mortgage given by Thompson to Hackney expressly secured not only the $160,000

evidenced by the eight notes but also "any other notes or other evidences of indebtedness which Hackney then had or held or might thereafter have or hold against Thompson." The latter went into bankruptcy and Hackney recovered judgment against him and his two sureties on the eight original notes totaling $160,000. Hackney assigned this judgment and his mortgage to the Piedmont Coal Company. As an incident to the bankruptcy proceedings part of the real estate subject to the mortgage was sold by order of court and the mortgage was released as to the part of the real estate so sold and the proceeds from the sale of the released portions were paid to the assignee of the mortgage. When this assignee, the coal company, received these proceeds, it did not apply them to the payment of the eight notes aggregating $160,000 secured by the mortgage, but used the proceeds to pay off the "future advances" secured by the mortgage. The two sureties for Thompson on the eight notes referred to objected to this. Their real estate had become subject to the lien of Hackney's judgment for $160,000 and they demanded that the proceeds mentioned should be used to lighten the lien on their property, they not being liable on the other obligations of Thompson held by Hackney. Hustead, one of the sureties, had conveyed his real estate, subject to this $160,000 judgment and more than a hundred other judgments, to his three sons. Hustead's real estate was sold for a large sum. The question before the auditor was how the sum should be distributed. If the assignee of the Thompson-Hackney mortgage was not entitled to apply the fund received from the mortgaged premises to the liquidation of the "future advances" before applying it to the eight notes of $20,000 each, then Hustead's real estate would be relieved to the extent of the aforementioned proceeds from the sale of Thompson's real estate. This court upheld the mortgagee in applying the proceeds from the sale of the mortgaged premises to the payment of the "future

advances" instead of to the chronologically prior obligations totaling $160,000.

The appellant contends that Moats v. Thompson is not controlling authority in this case, saying, "The dispute [there] was between codebtors or their privies in the same transaction, and did not involve outside parties." This distinction is without merit. If the mortgage for "future advances" did not bind Thompson's land in that case, the proceeds from the sale of that land could not have been legally applied to the liquidation of those advances. But this court held that it did bind the land and that the proceeds from the sale thereof could be so applied. That question is therefore settled. If the mortgage for uncertain future advances bound the land in that case it bound the land in the case now before us and equally here as there the proceeds from the sale of the land can legally be applied to the liquidation of the "future advances" the mortgage secured. This court said in the Thompson Case that "there is no doubt but that mortgages may be made to cover future advances and that they are valid and binding." This court, however, in the same case recognized the rule that "advances relate in lien to the actual date of the advancement instead of the date of the mortgage and are subsequent to all intervening encumbrances." A mortgagee cannot make voluntary additional advances after knowledge of an intervening claim and then have priority as to such advances. "Actual notice to the mortgagee will cut off his priority as to all optional future advances thereafter made": Menzier v. Lightfoot, 9 H. L. 11 Eq. 459 (Eng. 1871) ; Hopkinson v. Rolt, 9 H. L. Cas. 514 (Eng. 1871). However the rule thus variously stated had no application in the Thompson Case and has none here.

The judicial recognition accorded in Pennsylvania to mortgages for unlimited future advances as exemplified in the Thompson Case just reviewed and in the case now before us, is in harmony with the weight of Ameri-

can authority. See Robinson, Receiver, v. Williams, Receiver, 22 N. Y. 380; Ackerman v. Hunsicker, 85 N. Y. 43; Witczinski v. Everman, 51 Miss. 841; Michigan Ins. Co. v. Brown, 11 Mich. 265; McDaniels v. Colvin, 16 Vt. 300; Carey v. Herrick, 146 Washington 283; Freiberg v. Magale, 70 Tex. 116; Collier and Sons v. Faulk & Martin, 69 Ala. 58; Jarratt v. McDaniel, 32 Ark. 598; Buck Co. v. Buck, 162 Cal. 300, 122 Pac. 466; State Bank v. Tinker, 131 Kan. 525, 292 Pac. 748; Hendrix v. Gore, 8 Ore. 406; Chartz v. Cardelli (Nevada 1929), 279 Pac. 761; McCown v. Smith (Wis.), 54 N. W. 31; Jones's Treatise on the Law of Mortgages, 8th edition, volume 1, pages 88, 541, 594.

There is much logic in the argument that the judicial recognition accorded mortgages for unlimited future advances offends the spirit of our modern Recording Acts. For example, the Act of April 29, 1909, P. L. 289, section 1, provides that the recorder shall deliver at stated intervals to the board of revision of taxes or other officials charged with the assessment of state tax a list of the mortgages recorded, assignments, etc., with the names and residences of the mortgagees, assignees or persons entitled to interest, with the amount and date of the mortgages, etc. A mortgage given for future advances would put the recorder to the trouble of ascertaining the amount of such advances and this information might be withheld from him. However, the act quoted would not in itself justify us in departing from the judicial precedents long established in cases like this and in cases of cognate character. At present the question whether or not mortgages for unlimited future advances are in harmony with the spirit of our Recording Acts, is legislative and not judicial, and if public policy is to condemn such mortgages it must find statutory expression, as it has in Maryland and New Hampshire (Maryland: section 2, article LXVI, Code of Public General Laws, edition of 1924; New Hampshire: section 4, chapter 215, Public Laws of 1926).

The judgment of the court below is affirmed.