Louis Kirshenbaum, *Assignee vs.* McKesson & Robbins, Inc.

JUNE 11, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.  This is an action of assumpsit brought by the plaintiff to recover an alleged surplus of $2517 in the hands of the defendant corporation as a result of a mortgagee's sale of mortgaged personalty of the plaintiff's assignor.  The case was tried before a justice of the superior court sitting without a jury and resulted in a decision for the defendant.  The plaintiff excepted to this decision and has duly prosecuted his bill of exceptions to this court.

The facts which are substantially undisputed are as follows.  The plaintiff is the assignee of Frank W. Mastrola under a common law assignment.  Mastrola was engaged in the retail drug business in East Providence and on December 4, 1931 mortgaged his business stock and fixtures to McKesson Providence Drug Company, a Rhode Island corporation, to secure the payment of a note for $3000 dated February 23, 1928.  On December 5, 1931, this mortgage was properly recorded.

Later, on January 17, 1936, Mastrola executed a second mortgage of the same stock and fixtures in the sum of $992.74 to the defendant, McKesson & Robbins, Inc., a Maryland corporation, subject to the unpaid balance of the note secured by the first mortgage, which then amounted to $1161.64.  This second mortgage contained the following provision:  "Provided, nevertheless, that if the said mort-

gagor, his executors and administrators shall well and truly pay to the said mortgagee, its successors or assigns, a certain promissory note of even date with these presents, for the sum of Nine Hundred Ninety-two and 74/100 ($992.74) Dollars signed by said mortgagor and payable according to the tenor thereof, and shall also pay to said mortgagee, and to McKesson Providence Drug Company, their successors and assigns, any and *and and* all indebtedness or sums of money now due and owing by said mortgagor or which may hereafter, during the continuance of this mortgage become due or be owing by him to said mortgagee and to said Mc-Kesson Providence Drug Company, whether said indebtedness be secured or unsecured or evidenced by promissory notes, book accounts, or otherwise, then this deed to be void, otherwise to be and remain in full force."

On August 26, 1936, Mastrola made a common law assignment for the benefit of his creditors to the plaintiff, Louis Kirshenbaum. On that same date, defendant corporation began foreclosure proceedings under its mortgage of January 17, 1936, and a sale at public auction was held pursuant to notice of such proceedings on September 3, 1936, at which sale the mortgaged property was sold to the highest bidder for $3000.

It appears from the evidence that after the terms of the sale were read by the auctioneer he further stated, in response to an inquiry by a prospective bidder, Mr. Kossove, president and treasurer of McKesson Providence Drug Company, in the presence of Herman J. Aisenberg, Esq., attorney for both of the aforementioned McKesson companies, that the mortgaged property was "being sold free and clear of all encumbrances, including the so-called first mortgage that was on there." After the sale the highest bidder received, pursuant to this announcement and without further consideration from him, a discharge of the first mortgage.

It also appears from the evidence that the plaintiff's assignor, Mastrola, was indebted to the McKesson companies

in the total sum of $3402.64, which does not include fore-closure costs and attorney's fee of $150. From the proceeds of the sale, the balance of the note secured by the first mort-gage was paid to McKesson Providence Drug Company and the remainder was applied in partial payment of the indebt-edness due under the second mortgage to McKesson & Rob-bins, Incorporated. As the sale brought only $3000, a defi-ciency of $402.64 remained on the second mortgage debt, plus foreclosure expenses of $150.

Notwithstanding these facts which the plaintiff does not dispute, he claims that the defendant McKesson & Robbins, Inc. was entitled to only $1032.42, this sum being the amount of its note secured by the second mortgage plus in-terest to the day of sale, and that the balance of the sum of $3000 received at the sale belongs to him as the assignee of the mortgagor. In support of this contention, he argues that the second mortgage could be foreclosed only for the amount of the note which fixes the contract, and that the verbiage in the condition clause of the mortgage cannot enlarge the obligation of the note.

It seems to be well established that where there is a vari-ance between the note and the mortgage, the provisions of the note and not those of the mortgage control. 1 Jones on Mortgages, (8th ed.) 555. The plaintiff cites several cases in support of this principle but we need not discuss them be-cause, on our view of the evidence in the instant case, they are not in point. Here there is no variance. The amount of the note and the consideration recited in the mortgage agree but in addition it is expressly agreed, as recited in the condi-tion clause above quoted, that the mortgage shall stand as security for future advances and the amounts which may be due to McKesson Providence Drug Company, whether se-cured or unsecured. This is perfectly proper, as the indebt-edness secured under the condition clause of a mortgage need not be limited to the consideration for which the note and mortgage are given. See *Keyes* v. *Bump*, 59 Vt. 391;

*Shirras* v. *Caig,* 7 Cranch 34; *Robinson* v. *Williams,* 22 N. Y. 380; *State Bank* v. *Tinker,* 131 Kan. 525, 292 Pac. 748. The defendant, therefore, had the right to apply the proceeds of the sale in payment of all of these amounts due to McKesson Providence Drug Company. Since this was done, and especially since it was done with the express consent of the first mortgagee, there is no just cause for the plaintiff or his assignor to complain.

But there is another reason why this action must fail. The condition of the second mortgage expressly provided that it should be security not only for the amount of the mortgagor's note secured by that mortgage but also for future advances due from the mortgagor to the mortgagee, and also for all sums, secured or unsecured, due to the first mortgagee, McKesson Providence Drug Company. This amounted to an authorization by the mortgagor to McKesson & Robbins. Inc., in the event of his default to sell not only his equity of redemption but also the interest of the first mortgagee, subject of course to such mortgagee's consent.

This view is not inconsistent with that taken by this court in *Fudim* v. *Kane,* 48 R. I. 155 or *Brunette* v. *Myette,* 40 R. I. 546, cited by the plaintiff in support of his contention that the second mortgagee was not entitled to pay off the first mortgage out of the proceeds of the foreclosure sale of the second mortgage.

In the *Brunette* case, there was no authority obtained by the junior mortgagee, who was foreclosing his mortgage, to sell the mortgaged property free of the lien of the first mortgage, and he did not do so. The purchaser of the mortgaged property, in accordance with the terms of the sale, received a deed of the premises subject to the first mortgage. But the junior mortgagee paid off the first mortgage and sought to credit himself with the amount so paid from the proceeds of the sale in accounting with the mortgagor. Inasmuch as neither the mortgagor nor the first mortgagee had agreed to any such payment, this court refused to allow such a credit.

In the *Fudim* case, a somewhat similar situation was presented. There the second mortgagee foreclosed his mortgage of $12,000. The sale was made, as advertised, subject to the first mortgage of $6000, and the property was sold to the highest bidder for $15,000. The first mortgagee was present at the sale and asserted that his interest was in default and his mortgage would have to be paid, but no representations were made by anyone in authority that the sale was to be free from all encumbrances. The purchaser was the second mortgagee who mistakenly supposed that he was authorized to pay the first mortgagee and deduct the amount of the first mortgage from his bid. This he did. This court held that the surplus over and above the amount of the second mortgage belonged to the owner of the equity of redemption and that it could not be used to discharge a prior mortgage without such owner's consent, and cited as authority therefor *Bobbitt v. Blackwell,* 120 N. C. 253.

Both of these cases on their facts are in sharp contrast to the instant case. Here the mortgagor expressly agreed at the time he entered into the second mortgage that it was entered into upon the condition that he pay his obligations to the first mortgagee when due. Also, it was expressly announced at the foreclosure sale that the sale would be free and clear of the first mortgage, and, with the express consent of the first mortgagee, the sale was so held and a bill of sale of the property, free of all encumbrances given to the purchaser. In the face of these facts, the mortgagor will not be heard to claim the proceeds of the sale over and above the amount of the second mortgage, and of course neither will his common law assignee. "In the absence of statutory change a common law assignee succeeds simply to the right of his assignor." *Re Assignment of Najarian,* 44 R. I. 499, 500.

There is no error in the decision of the trial justice, and plaintiff's exception thereto is overruled. The plaintiff's exceptions 1, 2, 3 and 4 to certain rulings of the trial justice taken during the course of the trial, not having been briefed or argued, are deemed to be waived.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Alfred H. O. Boudreau, Isidore Kirshenbaum,* for plaintiff.
*Herman J. Aisenberg, Martin M. Zucker,* for defendant.