## In re PUSEY, MAYNES, BREISH CO.

## HERR v. PHILADELPHIA NAT. BANK.

### No. 7739.

Circuit Court of Appeals, Third Circuit.

Aug. 25, 1941.

Percival H. Granger and Howard S. Spering, both of Philadelphia, Pa. (Hugh D. Scott, Jr., of Philadelphia, Pa., on the brief), for appellant.

Arthur Littleton, of Philadelphia, Pa. (Murdoch K. Goodwin and Morgan, Lewis & Bockius, all of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The use of current accounts receivable as a security device is attacked in this case by a trustee in bankruptcy.

The facts deemed pertinent by the court are not in dispute. In 1935 the Pusey, Maynes, Breish Company (now the bankrupt) assigned to the Philadelphia National Bank current accounts receivable to secure an existing indebtedness of $20,000. Pursuant to a contract between the parties, the company over a period of seventeen months collected the accounts assigned by it and deposited the proceeds with the Philadelphia National Bank in a special account from which no withdrawals could be made without the consent of the bank. The bank received an assignment of each account, a notation of each assignment was made upon the books of the company and a check of the records of the company was made monthly by the bank. The bank, pursuant to the agreement, permitted no withdrawals from the special account unless it received prior thereto an assignment of additional accounts. Proceeds of cash sales by the company, also deposited in this account, could be and were withdrawn only upon proper proof and with the consent of the bank. There was no evidence of a material amount of return merchandise on assigned accounts but in any event, the company was under the duty to substitute new accounts for such credits. The total security held by the bank, consisting of the unpaid balance of assigned accounts and the special bank account, varied from time to time. Thus, at the outset, it was $21,995.25 and thereafter it remained at approximately $25,000. Four months before the bankruptcy of the company it was $24,640.10 and on August 4, 1936, the date of bankruptcy, it was $25,367.41. In these four months the total varied from a minimum of $23,017.89 on April 21, 1936, to a maximum of $28,812.45, on May 16, 1936. During all the period from the making of the contract until bankruptcy took place, there was assigned a great number of accounts, because the business of the company was done on the basis of very short terms of credit to its customers.

The trustee in bankruptcy filed a petition with Referee Deininger to compel the bank to return the security and the proceeds thereof as of the date of bankruptcy. Ten hearings on the petition were held over the period from January 8, 1937, to January 24, 1938. For some reason, unexplained by

the referee, he did not decide the matter until June 15, 1940, a delay of almost two and a half years.

Eventually the referee concluded that the substitution of collateral, not being made simultaneously with and in equal amounts to the release of cash by the bank to the bankrupt from the special account, constituted a fraud on creditors within the rule of Benedict v. Ratner, 1924, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. He ordered the bank to turn over to the trustee all the security held by it as of the date of bankruptcy. The District Court, 37 F.Supp. 316, reversed the order of the referee and decreed that the assignments were valid and effective.

■ The Supreme Court in Benedict v. Ratner, supra, applied a rule of New York law. The same rule is applicable in Pennsylvania. In re Fergusson Drug Co., D.C., E.D.Pa.1937, 19 F.Supp. 206 affirmed sub nomine, Markovitz v. Taylor, 3 Cir., 1938, 94 F.2d 782; cf. East Lewisburg L. & M. Co. v. Marsh, 1879, 91 Pa. 96. Under this rule an assignment of accounts receivable is deemed fraudulent as to the rights of creditors, if the assignor has control over the accounts to the extent that he is free to use the proceeds for his own purposes. The basic reason for the rule is not actual fraud but, at most, the avoidance of the possible fraud which may occur if a debtor can keep his assets from the reach of creditors by granting a lien to one creditor which the grantor has the power to terminate at will. Perhaps a more practical approach to the reason for the rule is simply that the debtor's power of control to end the lien is one which passes to an attaching creditor or to a trustee in bankruptcy, as the case may be.

■ Counsel for the trustee admit that there may be a substitution of security and that current accounts receivable can be used for security purposes, but contend that the withdrawal and substitution of security must be "contemporaneous" or "simultaneous," relying on words appearing in decisions such as In re Baumgartner, 7 Cir., 1931, 55 F.2d 1041; Lambert & Braceland Co., D.C.E.D.Pa.1928, 29 F.2d 758 and Wolfe v. Bank of Anderson, 4 Cir., 1916, 238 F. 343. But these cases present a different problem where the "contemporaneous" or "simultaneous" nature of the substitution was important because the creditor let go of the originally pledged security before getting the new one to be substituted for it. He may have let it go by delivering to the debtor a pledged chattel; he may have done so by permitting the debtor to collect an assigned account receivable and allowing the debtor to use the money for his own purposes. The question then arose concerning the effect of a later assignment. That is not this case. Here the debtor could not either by the terms of the contract or the course of dealing between the parties, withdraw the security (the proceeds of the collected assigned claims in the special account) until after the substitution of equivalent security and then only with the consent of the creditor. He exercised no dominion which created the possibility of fraud or which could pass to his creditors so as to defeat the right of the secured creditor.

■ The delivery of accounts, unaccompanied by a "simultaneous" or "contemporaneous" withdrawal, means simply that the debtor has a withdrawable balance. Whether it is drawn simultaneously or whether it is drawn subsequently in no way gives the debtor a dominion over the security and in no way is prejudicial to creditors. If the court were to hold otherwise, it would mean that mortgages for future advances would be invalidated. In Pennsylvania, as in most other jurisdictions, it is well settled that a mortgage for future advances is valid. Batten v. Jurist, 1932, 306 Pa. 64, 158 A. 557, 81 A.L.R. 625; cf. Commonwealth Trust Co. v. Reconstruction Finance Corp., 3 Cir., 1941, 120 F.2d 254.

■ Counsel for the trustee also contend that the established rule of substitution of security during the preference period, where other preference elements are present, invalidates assignments if they are greater than the security released, citing Remington on Bankruptcy, 4th Ed., 1704; 2 Collier on Bankruptcy, 13 Ed., 1283. This rule would not invalidate the assignments in toto. It might well be that in a proper case the excess, i. e., the difference in value between the new security and the old, constitutes a preference to that extent. But the instant case does not present this problem. While the deposit in the bankrupt's special account varies somewhat from day to day, that account was made up of the proceeds of cash sales and the proceeds of the assigned accounts which had been collected under the terms of the agreement. The cash sale proceeds were not assigned by the agreement and were subject to trans-

fer to the bankrupt's regular checking account upon demand and proof of identity by it. Nor do we know nor have we means of knowing that a variation in the nominal amount of the total of accounts assigned increased or decreased the total value of that which was assigned. We have no basis, therefore, for invalidating any part of the assigned assets in the bank's hands at the time the company's bankruptcy occurred.

The decree of the district court is affirmed.